ABRAHAM EAN, *appellant, vs.* CATHARINE SNYDER and
others, *respondents.*

The propositions concurred in and adopted by a majority of the judges, in
*Delafield* v. *Parish,* (25 *N. Y. Rep.* 9,) furnish a safe and reliable guide in cases
of a similar character; and in testing the question of the capacity of a tes-
tator to make a testamentary disposition of his estate, it is not essential for
courts to extend their inquiry beyond the rules stated in that case. *Per*
MILLER. J.

The rule established in *Stewart* v. *Lispenard,* (26 *Wend.* 255,) must be considered
as qualified by the propositions adopted by a majority of the court in *Dela-
field* v. *Parish,* (25 *N. Y. Rep.* 97.)

Hence the true question to be determined, in similar cases, is whether the tes-
tator was *compos mentis,* at the time of the execution of the will in question,
as those terms are used in their fixed legal meaning.

The legal presumption is that every man is *compos mentis ;* and, most usually,
the burden of proof that he is *non compos mentis* rests with the party who
alleges that condition of mind.

APPEAL from a decision of the surrogate of the county
of Ulster, refusing to admit to probate a certain instru-
men propounded and offered by the appellant as the last will
and testament of Peter Ean, deceased. The will was pre-
sented for probate on the 18th day of January, 1864, and
the decision of the surrogate, rejecting the will, was filed on
the 15th day of August, 1864. The facts, so far as mate-
rial, appear in the opinion.

*E. Cooke,* for the appellant.

*T. R. Westbrook,* for the respondent.

*By the Court,* MILLER, J. This case is presented upon
an appeal from the sentence and decree of the surrogate of
Ulster county, refusing to admit to probate an instrument
propounded by the appellant as the last will and testament
of Peter Ean, deceased. The parties are all children of the
deceased. The testator died on the 17th day of December,
1863, being at that time about eighty-two years of age.
The wife of the deceased died on the 5th day of March, 1859,

Ean *v.* Snyder.

and shortly afterwards, his son Abraham, who had previously resided on a small piece of land which belonged to his father, came and lived with him, and remained there up to the time of his father's death.   After the decease of Peter Ean's wife, and on the 27th day of December, 1859, he made and executed the instrument in question, by which he disposed of the bulk of his property to the appellant.   Although the instruments were not produced, there was evidence to show that the deceased had made a will, and two codicils, prior to the will propounded for probate, and that in these, as well as in the will in question, most of the real estate of the deceased, which comprised a considerable portion of his property, was devised to his son Abraham.   Prior to his death, Peter Ean had conveyed for the benefit of three of his four daughters, three parcels of wood land, and in his will he devised to them only a very small share of his estate ; far less in proportion than that given to his son Abraham.

The admission of the will to probate was resisted by the respondents upon the ground that the testator had not sufficient mind and understanding to qualify him to make a legal disposition of his property ; and also because the will was procured by the undue influence exercised by the proponent Abraham Ean over the testator.

The principal question litigated between the parties was the question of capacity, and to that inquiry the testimony was mainly directed.   And, as is not unusual in such cases, it involved the history, actions and conduct of the deceased for a long time, and for many years before his death.

Before entering upon an examination of the facts bearing upon the question to be considered, it may be well to advert to the rule of law which should govern and control in determining the capacity of a testator.

The case of *Delafield* v. *Parish,* (25 *N. Y. Rep.* 9,) is the last reported case where the rule of law applicable to cases like the present one has been fully discussed.   Although some difference of opinion exists as to the effect of that case

in reference to the principle laid down in *Stewart v. Lispen-*
*ard,* (26 *Wend.* 255,) yet I think that the propositions con-
curred in and adopted by a majority of the judges furnish a
safe and reliable guide in cases of a similar character. In
testing the question of the capacity of the testator to make
a testamentary disposition of his estate, it is not essential to
extend our inquiry beyond the rules stated in the case cited ;
but inasmuch as they may be considered as embracing
abstract propositions not at all times easy of application, it
may not be inappropriate to observe that in the decision of
the case, Davies, J. in an elaborate and well considered opin-
ion, condemns the rule adopted in *Stewart v. Lispenard.*
Six of the eight judges concurred in disapproving of that de-
cision ; and the rule there established, I think, must be con-
sidered as qualified by the propositions adopted by a majority
of the court in 25 *N. Y. Rep.* 97. (*See* 5 *N. Y. Sur. Rep.*
1 *Redf.* 204, *note.*) In conformity with these views, the
true question then to be determined is, whether the testator
was *compos mentis,* at the time of the execution of the will
in question, as those terms are used in their fixed legal mean-
ing. The legal presumption is that every man is *compos*
*mentis;* and most usually the burden of proof that he is *non*
*compos mentis* rests with the party who alleges that condi-
tion of mind.

Having referred to the principle of law which should con-
trol the determination of a question of the character of the
one now presented, it may be well to advert to the leading
features of the evidence produced before the surrogate which
have a bearing upon the subject.

There was considerable testimony adduced in opposition
to the will, which tended to show not only general unsound-
ness of mind, but that for several years prior to his death,
the deceased manifested conduct which indicated that he was
not, in all respects, in the full possession of his mental fac-
ulties.

I do not consider it essential to discuss at length the

Ean v. Snyder.

various transactions and circumstances which were proved, to establish this condition of mind. While it must be conceded that there is considerable testimony which tends to prove that the deceased, at the time he executed the will in question, was *non compos mentis* and had, not sufficient capacity to make a valid testamentary disposition of his estate ; yet a close and rigid scrutiny discloses the unquestionable fact that much of it related to conversations and conduct in regard to one particular subject, in reference to which there are strong if not infallible indications that he was laboring under a great mental delusion, if he was not entirely demented and insane. Upon that one topic his mind appeared to have been unbalanced and unsettled, and he had become almost, if not entirely, a monomaniac.

The evidence before the surrogate certainly shows a strange and remarkable condition of the mind, which if it did not entirely dethrone the reason and understanding of the testator to such an extent as to render him utterly incompetent to make a valid will, at least seriously affected the question of his general soundness and capacity.

It must not, however, be overlooked, in considering the question as to the sanity of the deceased, that on the part of the proponent several witnesses, although less numerous than those adduced on the other side, testify to the testator's capacity until within eleven months prior to his decease, and to business transactions with him, which embraced the sale of personal property, the loaning of money and other matters connected with the management of his own affairs, in which he appeared to comprehend the character of the business in which he was engaged.

The subscribing witnesses also testify with some distinctness as to his capacity. One of them had been acquainted with him for many years, and drew the will in question. He had previously, on two occasions, made some alterations in the testator's wills. He testifies that before the will now contested was made, the testator had informed him of his desire

to alter the disposition he had made of his property, in con-sequence of the death of his wife, and after several inter-views and full consultations, he prepared the will in question; that it was read to him carefully, then written over again to meet his views, and after that, executed. It also appears to have been executed in accordance with intentions before then entertained.

It must be admitted that the evidence before the surrogate was conflicting upon the question of capacity. Nor is it entirely clear and satisfactory that the execution of the will was procured by the undue influence of the proponent, with whom the testator resided.

As the case stands, I am inclined, upon the whole, and in view of the surrounding circumstances, to reverse the decision of the surrogate. I am fully conscious of the diffi-culties attendant upon a review of the decision of another tribunal, when the court has not the advantage of hearing and seeing the witnesses testify personally, and can only determine the weight to be given to their evidence by the record of the testimony. I should have considerable hesita-tion in reversing the decision of an inferior tribunal in a close and doubtful case, if the judgment was final and conclusive. As, however, the effect of a reversal in such a case only is, to present the case to another court and to a jury for deter-mination, upon such evidence as may be brought before them, we are at liberty to scrutinize the evidence and decision of the surrogate more closely.

The order rejecting the will must be reversed, and a feigned issue must be made up, to try the questions arising upon the application to prove the will. And the issues may be tried upon the motion of either party at a circuit court to be held in Ulster county. The costs of this appeal to the appellant must abide the event of that issue, and be paid out of the estate if he is finally successful.

[ALBANY GENERAL TERM, December 4, 1865. *Hogeboom, Peckham* and *Miller*, Justices.]