In the Matter of the Estate of HYMAN M. PALESTINE, Deceased.

Surrogate's Court, Kings County, April 6, 1934.

*Brill, Bergenfeld & Brill,* for the petitioner.

*Arthur M. Loeb,* for the respondent.

WINGATE, S. In its present form this proceeding is unprecedented, so far as the reported decisions in this State disclose.

Hyman M. Palestine died on July 28, 1930, and his wife, Katie, received letters of administration upon his estate four days later. In the late fall of 1932 an alleged creditor of the estate petitioned for an order directing that the administratrix file an account of her proceedings. An order for a compulsory accounting issued and was subsequently consolidated with a voluntary proceeding. An account was filed by the administratrix on January 28, 1933. This indicated that the estate was hopelessly insolvent, with assets of only a few hundred dollars and claims approximating $100,000. The petitioner in the compulsory proceedings has interposed a series of objections to this account postulated on the position that decedent at the time of his death was the owner of fifty per cent of the capital stock of certain corporations which were in a prosperous condition, and that the administratrix participated in a reorganization of their business affairs whereby new corporations were organized, the stock formerly belonging to the decedent surrendered, and stock of the succeeding concerns issued to the administratrix or her nominees as individuals.

Shortly after the joinder of these issues and at a time when they were about to be brought on for hearing, an affidavit made by a duly licensed physician, was filed in this court by the attorneys for the administratrix which recited that the deponent had been in constant professional attendance upon the administratrix for upwards of a year, and that she was then, and had for approximately four months previously, been confined in bed and " is mentally deranged and suffering from a complete mental breakdown. That she is irrational; that she does not know where she is when in truth and in fact she is in her own home; that at times she does not recognize most people, telling her children to commit suicide, in fact, Katie Palestine is completely and fully insane." It has further been made to appear to the court that no proceedings have been instituted for the appointment of a committee of the administratrix and that her former attorneys deem their representation of her at an end by reason of her total mental incompetency.

The present application seeks the appointment of a special

guardian for the alleged incompetent so as to permit the objecting creditors to proceed with the trial of the issues already joined.

The only reported cases presenting facts even remotely resembling those here disclosed, arose in the Surrogate's Court of New York county in connection with the estate of Augustus J. Brown. There, one Walston H. Brown was granted letters testamentary in 1877, but up to 1924 had never accounted. In that year a petition was submitted for a compulsory accounting, and citation thereunder was duly served upon the executor. A motion was then made by an attorney appearing specially for the purpose to vacate the service on the ground that a proceeding was then pending to have the executor declared an incompetent person. This motion was denied by Surrogate O'BRIEN, and his order in this respect was affirmed on appeal (*Matter of Evans*, 215 App. Div. 675).

The executor was adjudged an incompetent in February, 1926, and a committee appointed for him in May of the same year, following which an attorney appeared and moved to set aside the service upon the incompetent of the affirming order of the Appellate Division, on the ground of his adjudication of incompetency. This attorney did not purport to represent the committee, and his motion was denied on the theory that the adjudication of incompetency had ended the ability of the incompetent " to hire or retain counsel," and that " the attorney has no status as a person interested, and is without authority to appear for the respondent." (*Matter of Brown*, 131 Misc. 420, 421.)

Whereas partially *obiter* in that case, the following observations by Surrogate FOLEY are of importance as indicating the attitude of that distinguished jurist on a situation presenting the features of that presently at bar. He says (at p. 421): " Section 41 of the Surrogate's Court Act prescribes the manner in which this court may acquire jurisdiction over the parties to a proceeding. Section 63 of the Surrogate's Court Act in effect prohibits the appearance of an incompetent in a proceeding such as this, either personally or by attorney. Section 64 of the Surrogate's Court Act provides for the appearance of an incompetent by his committee, or, in default of such appearance, for the appointment of a special guardian by the surrogate to appear for him and to protect his interests. The effect of these statutory requirements is to make applicable to this court the mode and effect of appearance in other courts of record. The provisions of the Civil Practice Act permit an incompetent to bring an action or special proceeding through his committee only (Civ. Prac. Act, § 1377), and to defend an action or proceeding by his committee or guardian *ad litem*. (Civ. Prac. Act, § 208.) "

In June, 1927, Surrogate FOLEY made an order substituting the committee of the incompetent executor in the accounting proceeding and directing her to submit an account within twenty days. The accompanying memorandum does not appear to have been officially published except by its adoption as the majority opinion of the Appellate Division on appeal from the order. (*Matter of Brown*, 222 App. Div. 52.)

The affirmance by the Appellate Division was by a vote of three to two, the dissent being " on the ground that the surrogate was without power to substitute the committee of the incompetent and that he should have followed the statutory method set forth in section 64 of the Surrogate's Court Act by designating a special guardian to represent the incompetent."

It will be observed that the decisions in the *Brown* cases are in no wise germane to the situation presently presented. The first merely affirmed the inability of an adjudicated incompetent to appear by his personal attorney, and the second substituted the legally qualified successors of the adjudicated incompetent to his position, by analogy to the habitual practice under section 257 of the Surrogate's Court Act where the representative has actually died. Both positions appear logically unassailable but in no wise presently pertinent, since here there is no adjudicated incompetent, but one who is merely alleged so to be by *ex parte* affidavit.

It is, therefore, of present importance to determine the status before the law of one in the position of this administratrix. Section 236 of the Civil Practice Act provides that "A party who is of full age may prosecute or defend a civil action in person or by attorney unless he has been *judicially declared to be incompetent* to manage his affairs." (Italics not in original.)

Section 2320 of the Code of Civil Procedure, which is now partially continued in rule 285 of the Rules of Civil Practice, drew a clear distinction between " an alleged incompetent person " and " an incompetent person," the latter being one who has been judicially determined to be mentally unfit. It is only in respect to the latter that the disabilities respecting management of property, etc., envisaged in article 81 of the Civil Practice Act apply. Up to the time of such judicial determination any person is presumed to be sane with the burden of a contrary demonstration resting upon him who alleges incompetency. (*Weed* v. *Mutual Benefit Life Ins. Co.*, 70 N. Y. 561, 563; *Matter of Langdon*, 173 App. Div. 737, 738; *Ean* v. *Snyder*, 46 Barb. 230, 232.)

In conformity with this rule it has been uniformly determined that a person of unsound mind but not judicially declared incompetent may sue (*Williams* v. *Empire Woolen Co.*, 7 App. Div.

345, 348; *Runberg* v. *Johnson*, 11 Civ. Proc. Rep. 283, 292) and be sued (*Preitiss* v. *Cornell*, 31 Hun, 167, 168; affd., 96 N. Y. 665; *Sanford* v. *Sanford*, 62 id. 553, 557; *Kent* v. *West*, 16 App. Div. 496, 499; affd., 154 N. Y. 749) in the same manner as any ordinary member of the community, with the proviso noted in *Wurster* v. *Armfield* (175 N. Y. 256, 262), that " Incompetent persons become the wards of the court, upon which a duty devolves of protection both as to their persons and property. This duty is not limited to cases only in which a committee has been appointed, but extends to all cases where the fact of incompetency exists."

It is the effectuation of this principle which is envisaged in the portion of section 64 of the Surrogate's Court Act which reads: " Where any party * * * for any cause is mentally incapable adequately to protect his rights, although not judicially declared to be incompetent to manage his affairs, the surrogate must appoint a competent and responsible person, to appear as special guardian for that party." (See *Matter of Donlon*, 66 Hun, 199, 201.)

In view of the provisions of section 236 of the Civil Practice Act, as interpreted in *Williams* v. *Empire Woolen Co.* (*supra*), an interesting question might arise as to the authority of the Surrogate's Court to supersede an attorney appearing for an alleged but unadjudicated incompetent by a special guardian whose duties are almost invariably limited to those of an attorney in the examination " into the circumstances of the cause or matter so far as to enable him to protect the rights of " his ward. (Rules Civ. Prac. rule 42.) (See, also, rule 40, subd. 1; *Matter of Gill*, 92 Misc. 661, 662; *Edsall* v. *Vandemark*, 39 Barb. 589, 599; *Matter of Johnston*, 6 Dem. 355.) That question, however, is not here presented in view of the withdrawal from the proceeding by the former attorneys for the present administratrix.

The further fact that the court doubts the present utility of the present procedure has no bearing on the present determination, since the choice of the particular machinery of the court to be used in attempting to enforce its alleged rights rests with the objector. If the administratrix is as totally unqualified to act as would appear, her continued retention in that capacity is an obvious absurdity, and her removal should be sought under section 99 of the Surrogate's Court Act and an administrator *d. b. n.* appointed who would have the power and authority to recover the assets, the conversion of which is alleged, which power the special guardian will not possess.

It follows on the considerations hereinbefore noted, however, that the prayer of the present petition should be granted and that a special guardian will be appointed to protect the interests of the

administratrix in the pending accounting proceeding. This action does not, of course, in any sense amount to an adjudication of her incompetency, but is merely a determination to the effect that the present state of the record indicates the necessity for the court to intervene for her protection. Should a different situation be made to appear at some future time, it would be the right and duty of the court to vacate the appointment. (*Matter of Haynes*, 82 Misc. 228, 233.)

Proceed accordingly.