Sidney A. Fine, J.
In this action for a separation brought by the plaintiff wife against the defendant husband, plaintiff has made a motion for temporary alimony and counsel fees, and defendant has made (a) a motion pursuant to rule 106 of the Rules of Civil Practice for judgment dismissing the complaint on the grounds that the court lacks jurisdiction of the subject of the action and that the complaint does not state facts sufficient to constitute a cause of action, or, in the alternative, for an order pursuant to rule 103 of the Rules of Civil Practice striking out certain specified paragraphs of the complaint as sham and frivolous and (b) a separate cross motion pursuant to rule 107 of the Rules of Civil Practice for judgment dismissing the complaint on the ground that the plaintiff lacks legal capacity to sue, as well as for an order vacating the service of the summons, and dismissing the complaint on the ground that the attorneys appearing for plaintiff are without authority to represent her, or, in the alternative, for an order staying all proceedings on plaintiff’s part until there be a determination pursuant to article 81 of the Civil Practice Act as to plaintiff’s competency.
The complaint makes the following recitals. Plaintiff is and has been continuously since about February, 1952, “ mentally ill and of unsound mind and psychotic and incompetent to manage her person or property or affairs,” and in need of medical and psychiatric care and treatment and of hospitalization therefor. Plaintiff left defendant’s abode and residence in this State in or about February, 1952, and has not since returned thereto, but at the time she left and at all times since, she was and is, because of her mental condition and incompetence, “ incapable of knowing the nature, quality and consequences of her acts ” and incapable of abandoning defendant or of forming an intent to abandon him. Though defendant’s net income has been at the rate of about $100,000 a year since about February, 1952, he made inadequate contributions of but $200 per month for plaintiff’s support and maintenance, including medical care and treatment, from February, 1952 to October, 1953 and he has completely refused to make any provision for her since October, 1953.
On her motion plaintiff seeks an award of $325 per week for her maintenance and support pendente lite and a counsel fee of $10,000. The motion is supported by the affidavits of one Thayer A. Harvey, plaintiff’s son by a prior marriage, and of one of the attorneys appearing herein for plaintiff. The reason *1015 assigned for the failure to submit an affidavit by the plaintiff herself is, as stated in the son’s affidavit, that plaintiff is and has for some time been ‘‘ incompetent and in view of her condition the submission of her affidavit would be an empty gesture ”
The facts are to a large extent undisputed. Copies of Federal income tax returns filed by the defendant, annexed as exhibits to the son’s affidavit, indicate that defendant had a gross income of over $100,000 during each of the years 1951 through 1954 and that he filed a joint income tax return on behalf of himself and his wife for each of those years, as the result of which, it is asserted, he realized substantial tax savings for himself. The allegations made in plaintiff’s moving papers on this score are, indeed, not controverted by defendant. Defendant further does not deny that he has not contributed at all to the support, maintenance or treatment of his wife since about October, 1953 and that he made payments prior thereto, going back to February, 1952, of only $200 a month.
There also seems to be little or no dispute that plaintiff has been suffering from a serious mental illness since at least February, 1952 when she left New York City, where she was at the time living with defendant, to seek treatment for her illness. The circumstances with respect to her leaving New York City appear to be the subject of some dispute. Defendant maintains that he was informed by a psychiatrist, a Dr. Chaney, who examined plaintiff in January and February, 1952, that in his opinion she was paranoiac and that it was advisable for her to enter Bellevue Hospital in New York City for appropriate observation and treatment. Plaintiff’s son, on the other hand, has presented proof tending to show that another psychiatrist, a Dr. Burchell, to whom plaintiff was referred by Dr. Chaney, examined plaintiff on February 15, 1952 and found her to be schizophrenic and paranoiac, but deemed it inadvisable for plaintiff to be sent to Bellevue and was of the opinion that treatment in some private institution would be more beneficial for her. The papers indicate that plaintiff herself was averse to going to Bellevue, and there are suggestions even in the papers submitted by defendant that it might have been necessary to use some measure of force to take plaintiff to that institution.
In any event, it seems that plaintiff left New York City about February 16, 1952 and, upon Dr. Burchell’s recommendation, entered a private institution known as the Institute of Living in Hartford, Connecticut. Defendant, however, refused to pay that institute’s bills for his wife’s treatment though it appears that he had previously advised his wife that she could consult *1016 a physician of her choice and follow the treatment recommended by such physician. In consequence, plaintiff, being without means to pay for such treatment, was compelled to leave that institution in March, 1952, though the institute advised defendant that she was in need of further hospitalization.
Thereafter plaintiff, after first staying with other relatives, went to live with her son, Thayer, in Minnesota. Upon a psychiatrist’s advice, she received treatment for a time in the mental ward of a hospital in St. Paul, Minnesota, but was compelled to leave that hospital upon defendant’s refusal to pay the hospital’s and doctors’ bills. She subsequently became a patient in a State Hospital in Hastings, Minnesota, and was provisionally discharged from that hospital in the custody of her son in May, 1954.
It further appears that in July, 1953 the Probate Court of Hennepin County in Minnesota granted letters of general guardianship of plaintiff’s person and estate to her son, Thayer A. Harvey, on a petition executed by plaintiff herself which stated that “ because of illness resulting in imperfection of mentality ” she was “ incompetent to manage her person and estate In May, 1956 the same Probate Court made an order denying plaintiff’s application for termination of the guardianship and for her restoration to capacity, making findings that plaintiff was ‘‘ mentally ill, * * * not of sound mind, * * * psychotic, * * * incapable of managing her person and estate, and * * * in need of continuing psychiatric and medical care and treatment ”. It seems that plaintiff is still in Minnesota, but the papers do not make it clear whether she is still receiving medical care and treatment.
Defendant’s position appears to be that he has at all times been ready, able and willing to provide necessary medical treatment for his wife, but has insisted that such treatment be administered to her in New York, and he attempts to justify on that ground his refusal to make any payments for her support, maintenance and treatment during the last several years.
Defendant further raises the legal objection that since the complaint on its face alleges that plaintiff is incompetent, the conclusion necessarily follows that plaintiff lacks legal capacity to bring this action. That contention, however, appears to be without merit, in view of the fact that plaintiff has never been judicially declared in this State to be incompetent to manage her affairs.
There is nothing anomalous in the maintenance of an action for separation at the instance of an incompetent spouse. (Kaplan v. Kaplan, 256 N. Y. 366.) Where the spouse has been judicially *1017 declared incompetent in accordance with the governing provisions of this State, the action would he maintainable only by a committee or a guardian ad litem. (Civ. Prac. Act, §§ 207, 236; Kaplan v. Kaplan, supra.) Where, however, there has been no such adjudication of incompetency, the wife herself may bring the action for separation in her own right. (See Anonymous v. Anonymous, 3 A D 2d 590, 594 [2d Dept.].)
Section 236 of the Civil Practice Act provides in part that “ A party who is full age may prosecute or defend a civil action in person or by attorney unless he has been judicially declared to be incompetent to manage his affairs.” (Emphasis supplied.) This section has been authoritatively interpreted by the Appellate Division of the Second Department in Anonymous v. Anonymous (3 A D 2d 590, supra) as leaving unimpaired the legal capacity to sue of an incompetent person who has not been judicially declared as such in this State. The court thus stated (p. 594): “ This section is to be applied according to its terms. It refers to a person judicially declared to be incompetent to manage himself or his property in a proceeding pursuant to the provisions of the Civil Practice Act, and, in conformity with the principles above summarized, it has been uniformly determined that a person of unsound mind but not judicially declared incompetent may sue and be sued in the same manner as any ordinary member of the community (see Jacobs v. State of New York, 175 Misc. 561; Matter of Palestine, 151 Misc. 100, supra, and cases therein cited).” (Emphasis supplied.)
Defendant, however, urges that the adjudication of incompetency made by the Probate Court in Minnesota, pursuant to plaintiff’s own petition, must be accorded full faith and credit in this State, with the consequence that plaintiff must thereby be deemed an adjudicated incompetent and, therefore, lacking capacity to sue under section 236 of the Civil Practice Act. It is settled, however, that the decree of a court of another State adjudging a person domiciled in New York to be an incompetent and appointing a committee for the property of such person is jurisdictionally void and is not binding upon the courts of this State. (Matter of McHie, 233 App. Div. 388 [1st dept.], affd. 258 N. Y. 589; Matter of Curtiss, 134 App. Div. 547 [1st dept.], affd. 197 N. Y. 583.) It seems to be acknowledged by both parties in this case that plaintiff has continuously been domiciled in New York, notwithstanding her temporary sojourns elsewhere with relatives and in the hospitals mentioned above. There is certainly no showing that plaintiff consciously or intentionally abandoned or changed her New York domicile, and it is extremely doubtful whether plaintiff was capable of making *1018 such a change in view of her mental disorder. Indeed, defendant’s own papers show that subsequent to the appointment of plaintiff’s son as her general guardian, the Minnesota State Hospital, in which plaintiff was being treated at the time, consented to make arrangements for her transfer to Bellevue Psychiatric Hospital in New York, at defendant’s instance, on the basis of her “ legal settlement ” being in this State.
It is further questionable whether the original Minnesota order of general guardianship, which made no finding of incompetency beyond accepting the general allegations of the petition that plaintiff was “incompetent because of illness resulting in imperfection of mentality,” may be regarded as satisfying the requirement imposed as a condition of giving force and effect to a foreign decree of incompetency, that it “ substantially describe the same incompetency which by our statute is made a ground for the appointment of a committee.” (Cf. Matter of Curtiss, 134 App. Div. 547, 552, supra; Matter of Clark, 175 N. Y. 139.) The subsequent order, made almost three years later, denying the petition to terminate the guardianship, made more detailed findings as to plaintiff’s mental condition as of the date of that petition, but it is doubtful whether any defect in the original order could be cured by the findings made in such subsequent order.
Moreover, defendant is in any event estopped from challenging plaintiff’s legal capacity to sue, by reason of the totally inconsistent position taken by him in a prior action brought by plaintiff in this State against him for a separation and for an accounting. That prior action was instituted by plaintiff in this court on December 1,1953, subsequent to the Minnesota adjudication of incompetency, through a guardian ad litem appointed by this court. Defendant in that action was successful in securing an order vacating the appointment of such guardian ad litem, on the ground, among others, as asserted by him, that the court was without power to appoint a guardian ad litem for the plaintiff since she was domiciled in New York and had not been adjudicated an incompetent under the provisions of article 81 of the Civil Practice Act. Defendant on that motion urged that in view of plaintiff’s being domiciled in this State, the adjudication of incompetency made by the Probate Court in Minnesota was not entitled to any force or effect.
This court, by order made on June 22, 1954, granted defendant’s motion to vacate the order appointing the guardian ad litem, with a short memorandum in which it was stated: “ It is conceded that there has been no adjudication of incompetency and under the circumstances the Court was without power to *1019 appoint a Guardian ad Litem.” The action was thereafter dismissed upon plaintiff’s failure to comply with another order requiring her to furnish security for costs.
By reason of the successful position thus taken by him in the prior action, defendant “ comes within the rule that a claim made or position taken in a former action or judicial proceeding will estop the party from making any inconsistent claim or taking a conflicting position in a subsequent action or judicial proceeding to the prejudice of the adverse party ”. (Houghton v. Thomas, 220 App. Div. 415, 423, [1st dept.], affd. 248 N. Y. 523.)
There is likewise no merit to the additional grounds asserted by defendant for dismissal of the complaint, that the court lacks jurisdiction of the subject of the action, and that the complaint is legally insufficient. There is no jurisdictional infirmity, and the complaint states a legally sufficient cause of action for a judicial separation on the ground of nonsupport. The objection advanced by defendant that the complaint on its face shows that plaintiff herself abandoned defendant, without any fault on defendant’s part being alleged as provocation for the abandonment, is without substance, since the complaint clearly asserts that at the time plaintiff left defendant she was, because of her mental condition, incapable of knowing the nature and quality of her acts and incapable of abandoning the defendant or of forming an intent to abandon him, and that that mental condition has continued to the present time. The law on the subject has been well expressed by the Court of Appeals in Goodale v. Lawrence (88 N. Y. 513, 520): “ But an insane wife is incapable of abandoning her husband. When a wife is suffering under such an affliction, it is the duty of the husband — a duty imposed by the relation he bears to her as well as by the plainest dictates of humanity — to protect and support her ”,
There being no effective adjudication of plaintiff’s incompetency, there is likewise no basis for challenging the authority of the attorneys who have appeared for plaintiff in this action, such authority being shown prima facie by a formal retainer agreement apparently executed by plaintiff herself. (Cf. Williams v. Empire Woolen Co., 7 App. Div. 345 [4th dept.])
The moving papers on the motion for alimony pendente lite and counsel fee make a sufficient showing of need on the part of the wife, of pecuniary ability on the part of the husband and of a reasonable prospect of success in the action, to warrant an award. That the wife is in dire need of support and maintenance and of medical treatment for her serious mental condition, is plainly established by the moving papers and does not appear to be seriously controverted by defendant. Defendant likewise has *1020 failed to controvert the showing made with regard to his substantial income.
As noted above, defendant has fallen back upon his claim that he would be willing to provide for his wife’s medical treatment if she were to return to New York. The bona fieles of that claim are open to serious question, however, in view of the fact that defendant, although having knowledge of plaintiff’s serious mental plight throughout the years in question, while she was in Minnesota, never took the steps that a solicitous husband, concerned about the welfare of his wife, would have taken to insure the proper care and treatment for her condition. The extent of his efforts was to remain in New York and write letters denying his liability for his wife’s medical and hospital bills, and to persist in his position that he would resume his marital obligations only on condition that she return to this State. Indications are to be found in the affidavits and exhibits submitted by plaintiff’s son that plaintiff entertained some fear of defendant and seemed reluctant to return to this State, a fear and reluctance which may have been motivated in part by plaintiff’s reaction to defendant’s apparent intent to have her confined to a public mental institution, as distinguished from private treatment. It can certainly not be determined, without medical proof, whether it would have been harmful to plaintiff, in her existing mental state, to compel her to return to New York. There is nothing to show that defendant consulted with any qualified physician to determine whether it would not be more beneficial for plaintiff to continue to receive treatment in Minnesota. Defendant’s asserted excuse that plaintiff’s son was responsible for plaintiff’s remaining away from New York, affords no justification for his refusal to make any contribution whatever for his wife’s needs and for his disregard of her welfare.
Far from making any efforts to care for his wife or to provide her with necessary medical treatment, defendant interposed a host of technical defenses and objections to the prior action brought in this court on plaintiff’s behalf, and has continued those tactics in the instant litigation. Defendant has thus far been successful in shirking all his obligations to his wife, and, as appears from the papers here presented, plaintiff has been compelled to seek treatment in a publicly supported institution in Minnesota and is apparently now without any resources for further medical care and treatment. The plight in which plaintiff has been placed by the persistent refusal of her husband to make any provision for her during the last several years, notwithstanding his annual income of some $100,000, and despite the *1021 fact that he reaped substantial tax savings hy filing joint income tax returns in behalf of his wife and himself during that period, presents an extremely serious situation which urgently calls for appropriate action by a court of equity.
Although the court, as noted, entertains no doubt as to the legal capacity of plaintiff to maintain this action, in the absence of an adjudication of her incompetency by the courts in this State, the court is of the opinion that in view of the allegations in the complaint and the showing made in the various motion papers with respect to plaintiff 's serious mental condition, the appointment of a special guardian is here necessary for the protection of her rights and interests. That the appointment of such a special guardian is an appropriate measure in circumstances such as those here presented is established by the decision in Anonymous v. Anonymous (3 A D 2d 590, supra). That case involved an action brought by the plaintiff against his former wife to impress a trust and for an accounting, in which it appeared that the plaintiff had been certified to a State hospital in this State pursuant to the provisions of the Mental Hygiene Law, but had never been adjudicated to be an incompetent. The Supreme Court of Kings County dismissed the complaint during trial, without prejudice, on the ground of plaintiff’s lack of capacity to sue. The Appellate Division of the Second Department reversed, holding that plaintiff, though of unsound mind, nevertheless possessed legal capacity to sue since he had not been judicially declared incompetent. The court went on to say (3 A D 2d 594): “ This does not mean that a person of unsound mind will not receive the protection of the court (Wurster v. Armfield, 175 N. Y. 256, 262, supra), and specific provision is made for the appointment of a guardian ad litem or special guardian at any stage of any action or proceeding where it appears necessary for the protection of his rights and interest (Civ. Prac. Act, § 207). The appointment of such a guardian would of course in no way amount to an adjudication of incompetency but would merely be a determination of the fact that the state of the record indicates a necessity for the court to intervene for the party’s protection. It may be that that is what should have been done in this case, and, on a retrial, the court may see fit so to exercise its discretion.”
Section 207 of the Civil Practice Act provides that “ The supreme court may appoint a guardian ad litem or special guardian for an infant or an incompetent person, at any stage in any action or proceeding, when it appears to the court necessary for the proper protection of the rights and interests of such infant *1022 or incompetent person and fix the fees and compensation of such guardian, except when it is otherwise expressly provided by law ”.
Section 207 is merely declaratory of the inherent power of the Supreme Court to provide for the care, custody and control of incompetents through court-appointed representatives. (Cf. Moore v. Flagg, 137 App. Div. 338, 347 [1st dept.]; McCabe v. State of New York, 208 Misc, 485, 489; 19 Carmody-Wait on New York Practice, p. 725.) That power may be exercised for the protection, where necessary, of a plaintiff or defendant of unsound mind, regardless of whether there has been an adjudication of incompetency or the appointment of a committee. (Anonymous v. Anonymous, 3 A D 2d 596, supra; Matter of King, 284 App. Div. 748 [2d Dept.]; Hunter v. Hatfield, 12 Hun 381, affd. 73 N. Y. 600; Hanley v. Brennan, 19 Abb. N. C. 186; McCabe v. State of New York, supra; cf. Matter of Palestine, 151 Misc. 100.) Litigants “who are in fact incompetent, but have not been so adjudicated ”, are those who especially “ need protection, not those for whom a committee has been appointed ”. (McCabe v. State of New York, supra, p. 488.)
As the Court of Appeals observed in Wurster v. Armfield (175 N. Y. 256, 262): “ Incompetent persons become the wards of the court, upon which a duty devolves of protection both as to their persons and property. This duty is not limited to cases only in which a committee has been appointed, but it extends to all cases where the fact of incompetency exists ”.
As is cogently explained in McCabe v. State of New York, (supra, pp. 489-490), certain language in .the opinion in Matter of Frank, 283 N. Y. 106), which on its face might appear to reflect a contrary position, has relevance only to a case involving the designation of a special guardian in abortive proceedings for the appointment of a committee for an alleged incompetent, and does not reach a situation such as that here presented.
The special guardian to be here appointed will be directed to conduct a thorough investigation into this matter and to report to the court his recommendations as to the appropriate course of action that he deems should be taken for the care and protection of plaintiff’s rights and interests in the light of her mental condition. The fees and disbursements of such special guardian, including the expenses of a possible trip to Minnesota, will be payable by defendant, as and when allowed or approved by this court, as necessary litigation expenses of plaintiff.
Plaintiff is awarded alimony pendente lite in the sum of $300 per week, payable from the date of the commencement of this action, and counsel fee in the amount of $3,500, exclusive of the *1023 special guardian’s fee and disbursements, without prejudice to an application for an additional fee or fees as may be warranted by the future course of this litigation. The motion and cross motion made by defendant are in all respects denied. Settle order accordingly.