Sidney A. Fine, J.
The committee of the person and property of Mildred E. Sengstack, an incompetent, has petitioned the court, on notice to all interested parties, for instructions with respect to the settlement of a pending action for separation originally instituted by Mrs. Sengstack in her own name against her husband, John F. Sengstack, prior to the adjudication of incompetency. A proposed settlement agreement has been negotiated between the committee and the husband, and the committee seeks instructions from the court as to whether to enter into the proposed agreement as being in the best interests of the incompetent.
The complaint in the action for separation, instituted in this court by Mrs. Sengstack in her own name in July, 1957, alleged that she had been continuously mentally ill and of unsound mind and in need of medical and psychiatric care and treatment since about February, 1952. It was further alleged that she had left her husband’s residence in this State in February, 1952, and had not since returned thereto, but that at the time she left and at all times since, because of her mental condition, she was incapable of knowing the nature, quality and consequences of her acts; and that her husband had failed to provide for her support and maintenance, including medical care and treatment.
The plaintiff wife moved for an allowance of temporary alimony, and the defendant husband moved to dismiss the complaint on a number of grounds, including those of lack of capacity to sue and legal insufficiency of the complaint. This court denied the motions to dismiss the complaint and made an award of temporary alimony in the amount of $300 per week. The court also appointed a special guardian and directed him to conduct a thorough investigation into the matter and to report to the court his recommendations as to the appropriate course of action that he deemed should be taken for the care and protection of the wife’s rights and interests in the light of her mental condition. (Sengstack v. Sengstack, 7 Misc 2d 1012.) This court’s order was thereafter affirmed by the Appellate Division and the Court of Appeals. (Sengstack v. Sengstack, 4 A D 2d 1035, affd. 4 N Y 2d 502.)
Though upholding the legal capacity of the wife to bring the action for separation in her own name in the absence of an adjudication of her incompetency, notwithstanding the allegations in her own complaint as to her mental infirmity, the Court of Appeals stated (4 N Y 2d 511): “ It seems incongruous that a self-declared incompetent person may be a suitor in the courts but the courts in this case have not closed their eyes to the fact *26 that plaintiff is of unsound mind. Obeying the instructions of the order below the special guardian will investigate and report to the court as to what the situation is and as to what should be done to protect plaintiff. We must assume that the Supreme Court on receipt of that report will do what is necessary for her further protection. ’ ’
The special guardian thereafter reported to the court his conclusions, on the basis of a thorough investigation, that Mrs. Sengstack was mentally incompetent to manage her affairs and in need of continued psychiatric treatment, and that the protection of her rights and interests demanded that a committee of her person and property be appointed to supervise her treatment and attend to the management of her property and the prosecution of the pending separation action.
Following the filing of the special guardian’s report, one of Mrs. Sengstack’s sons by a former marriage, Richard L. Harvey, instituted this proceeding under article 81 of the Civil Practice Act for the appointment of a committee of her person and property. The proceeding resulted in an adjudication that Mrs. Sengstack is an incompetent person and in the appointment as her committee of the attorney who had served as special guardian. The committee thereafter decided to continue the prosecution of the separation action in behalf of the incompetent, and was substituted as plaintiff in the action.
Particularly in view of the unusual nature of the action for separation and the attendant circumstances, and in view of the fact that the proposed settlement agreement would entail, among other things, the waiver by the incompetent of her statutory right of election in respect of her husband’s estate, it is appropriate for the committee to seek the instructions of the court. (Cf. Matter of Hills, 264 N. Y. 349; Matter of McKitterick, 286 App. Div. 885, appeal dismissed 309 N. Y. 803; Matter of Ford, 4 Misc 2d 410.)
This brings us to a consideration of the terms of the proposed agreement. It appears that Mrs. Sengstack is now 59 years of age and Mr. Sengstack is 68. Mrs. Sengstack has since November, 1957, been a patient in Glenwood Hills Hospital, Minneapolis, Minnesota, where she has been receiving psychiatric care and treatment.
In substance, the proposed agreement provides that Mr. Sengstack is to make stipulated direct payments to Mrs. Sengstack, or her committee, for her support and maintenance during his lifetime; and, in addition, he is immediately to establish a trust to provide funds necessary for her support, both before *27 and after Ms death, and is to keep in force specified insurance policies on his life, the proceeds of which will be payable to her in lump sums upon his death. She in turn is to release and waive all claims against his estate, including any right of election under section 18 of the Decedent Estate Law, except as provided in the proposed agreement.
It is provided that for the period of Mr. Sengstack’s anticipated life expectancy, namely, for a period of some 12 years until December 31, 1973, or until the death of either of the parties, Mrs. Sengstack is to receive from Mr. Sengstack the net amount, after payment of Federal and State income taxes, of $10,000 per annum, in equal monthly installments. After December 31,1973, when Mr. Sengstack will be 80 years of age, these direct payments will be reduced to $5,000 per annum and will continue for so long as both parties shall live, but the payments during this latter period will be taxable income to Mrs. Sengstack.
The trust, to be immediately established by Mrs. Sengstack, will have an initial principal of $72,000, comprising about 31% of Mr. Sengstack’s present estate. The income of the trust is to be immediately available if and as required for Mrs. Sengstack’s support beyond the annual $10,000 payments during the period up to December 31,1973, and will also be fully available to her after the latter date, or Mr. Sengstack’s death, whichever is earlier. Provision is, in addition, made for the invasion of the principal of the trust to the extent required for Mrs. Sengstack’s support if her income from the trust and other sources be insufficient therefor. To the extent that the income from the trust is not required for her support and maintenance during the initial 12-year period up to December 31, 1973, it is to be accumulated and added to the principal. The trust is to terminate on Mrs. Sengstack’s death, in which event the principal is to be paid over to Mr. Sengstack if he be then living, or to his son, or in certain contingencies as Mr. Sengstack may by his will appoint.
The life insurance policies which Mr. Sengstack is to keep in force for his wife’s benefit consist of three policies aggregating $15,000 and a group life insurance policy in the present face amount of $40,000, which will, however, gradually be reduced as Mr. Sengstack grows older, until it reaches an ultimate minimum of $16,000. The minimum amount of the proceeds of the four policies payable to Mrs. Sengstack on her husband’s death will thus be $31,000. In order, however, to assure Mrs. Sengstack the equivalent of life insurance protection to the extent of at *28 least $40,000, it is further provided that Mr. Sengstack will bequeath to the trust, as an addition to principal, an amount equal to the difference between the sum-pf $40,000 and the aggregate amount of the life insurance proceeds payable to Mrs. Sengstack upon her husband’s death.
The proposed agreement also contains various other provisions for Mrs. Sengstack’s benefit and protection. Mr. Sengstack is thus to reimburse the trust for all Federal and State income taxes payable with respect to the income of the trust during the period up to December 31, 1973. It is further provided that Mr. Sengstack will include directions in his will against the apportionment of any estate taxes as against the trust, the insurance policies, or the bequest that he is to make to the trust in the contingency hereinbefore noted. Mr. Sengstack is also to release and waive all his rights in his wife’s estate.
The proposed agreement appears to have been carefully prepared with an eye to making ample and secure provision for the incompetent’s support and maintenance during her lifetime. For the period of Mr. Sengstack’s normal life expectancy, it will assure her of an annual $10,000 net-after-taxes income, with the further right to resort to the trust as and when required. The immediate establishment of the trust 'will further benefit Mrs. Sengstack by eliminating the risk of diminution of her husband’s estate prior to his death and making possible increases in the size of the trust by way of income accumulations. In the contingency that Mr. Sengstack will outlive his life expectancy, Mrs. Sengstack will receive direct payments of $5,000 per annum during the remainder of her husband’s life, in addition to the income from the trust, together with the right to invade the principal, if necessary. Upon Mr. Sengstack’s death, Mrs. Sengstack will have available the funds provided by the trust and the life insurance proceeds hereinbefore mentioned.
The provisions thus made clearly appear to be fair and adequate, particularly in view of the ages and circumstances of the parties, the tax features involved and the over-all disposition. One of the relevant circumstances is that Mr. Sengstack’s principal source of income appears to be his drawing as a partner in a firm of public accountants, and under his firm’s partnership agreement he is in the process of a gradual compulsory retirement which will shortly result in a sharp reduction of his earnings.
The committee’s application for instructions is accordingly granted and the committee is authorized and instructed to enter into the proposed settlement agreement on behalf of the incompe *29 tent. The fees which the proposed agreement provides are to be paid by Mr. Sengstack for the legal services rendered by the committee’s attorneys and by the attorneys who represented Mrs. Sengstack prior to the adjudication of incompetency are approved as fair and reasonable.