ANONYMOUS, Appellant, *v.* ANONYMOUS, Respondent.

Second Department, May 13, 1957.

*Thomas A. McDonald* and *George A. Murphy* for appellant.

*Thomas W. Fleckenstein* for respondent.

UGHETTA, J.  Plaintiff brought this action against his former wife to impress a trust on real property and for an accounting. Among other allegations, the complaint states that on November 1, 1942, and for some time thereafter, plaintiff and defendant were husband and wife and resided together, that for a considerable period of time prior and subsequent to November 22, 1946 plaintiff was physically and mentally ill and during the period from December 12, 1946 to December, 1953 was confined in Brooklyn State Hospital, and that in March, 1952 defendant obtained a decree of annulment.  The answer contains denials and two separate defenses pleading the Statute of Limitations.

After plaintiff's evidence, and part of defendant's, was in, the court announced that the filed papers showed that plaintiff had been adjudged incompetent and that, under section 236 of the Civil Practice Act, he might not maintain the action.  The judgment appealed from recites that the papers in the annulment action showed '' that the plaintiff at the time of this action did not enjoy the capacity to sue '', and dismissed the complaint '' without prejudice to any action which a Committee may take, if a Committee be appointed, or to an action by the plaintiff, if declared competent in a proper proceeding.''

In 1944 plaintiff was admitted to Pilgrim State Hospital where he remained for several days.  In December, 1946, after a period of observation in Kings County Hospital, he was certified, pursuant to the provisions of the Mental Hygiene Law, to Brooklyn State Hospital, where he remained until December, 1953.

Section 70 of the Mental Hygiene Law provides for the certification of a person found to be mentally ill to a State hospital. (The words '' mentally ill '' and '' certification '' were substituted for the words '' insane '' and '' commitment '' by L. 1944,

ch. 665.) A "mentally ill person" is defined as "any person afflicted with mental disease to such an extent that for his own welfare or the welfare of others, or of the community, he requires care and treatment" (Mental Hygiene Law, § 2, subd. 8).

Plaintiff was never adjudicated incompetent to manage himself or his affairs under the provisions of article 81 of the Civil Practice Act, and no committee of his person or property was ever appointed. A proceeding under this article is frequently referred to as an "inquisition". A person so judicially declared incompetent may bring an action or special proceeding through his committee only and may defend an action or special proceeding by his committee or by a special guardian ad litem appointed when the interests of the committee appear to be adverse to those of the incompetent (Civ. Prac. Act, §§ 236, 1377, 208). The rationale of these principles is well stated in *Matter of McGuinness* (290 N. Y. 117, 118): "By statute, the custody of the person and the control and management of the property and affairs of an incompetent person and the use and disposition of his property are exclusively vested in the Supreme Court whose jurisdiction *must be exercised* by means of a committee appointed according to procedure provided in the Civil Practice Act (Civ. Prac. Act, §§ 1356–1358). There may be no interference with or disposition of his property until such jurisdiction is exercised and a committee appointed whose proceedings are subject continuously to proper and orderly supervision of the court (*Matter of Schneider,* 234 App. Div. 722; *Matter of Rinn,* 242, App. Div. 523; *Finch* v. *Goldstein,* 245 N. Y. 300; *Matter of Frank,* 283, N. Y. 106)." Indeed, it is not even proper to refer to one as "an incompetent person" until after a committee has been appointed (Rules Civ. Prac., rule 285; *Matter of Palestine,* 151 Misc. 100).

Much has been written on the distinction between the rights and powers of a person for whom a committee has been appointed and those of one who has not been judicially declared to be incompetent. Yet there seems to be a widespread misconception on the subject, engendered in part by the inaccurate use of the term "incompetent" to refer to a person of unsound mind who has not been adjudicated incompetent (see, e.g., *Wurster* v. *Armfield,* 175 N. Y. 256; Civ. Prac. Act, § 207). In view of this general misunderstanding a brief recapitulation of the general principles may be helpful.

A certification that a person is afflicted with a mental disease requiring care and treatment is not the same thing as an adjudication that he is incompetent to manage himself or his affairs.

The ancient cases refer to the latter as '' office found '', and it has long been the settled law of this State that acts of an insane person, such as the making of a contract or the execution of a deed — before '' office found '' are voidable only, not absolutely void (*Smith* v. *Ryan,* 191 N. Y. 452). Thus, a deed and powers of attorney executed by a person of unsound mind may be ratified after he regains his reason (*Blinn* v. *Schwarz,* 177 N. Y. 252). In *Finch* v. *Goldstein* (245 N. Y. 300) it was held that in an action by the committee of an incompetent person to foreclose a purchase-money mortgage on land sold by the incompetent prior to the inquisition wherein he was adjudged incapable of handling his property, a defense that the incompetent was insane at the time of the conveyance is insufficient and a counterclaim demanding that the transaction be declared null and void, and the purchase price returned, is properly dismissed. The distinction has perhaps been most clearly and succinctly set forth by Judge CRANE at pages 303–304 of the case last cited:

'' What is meant in these decisions by ' office found ' or ' judicially declared incompetent? ' They have reference to proceedings under the Civil Practice Act for the appointment of a committee to take possession of and care for the property of an incompetent. Until the appointment of a committee neither the State nor any one else has any power or control over his property or any authority to act in his behalf. He alone remains in possession of his property and can dispose of it. If as a fact he be incompetent at the time he acts, his transactions may be set aside at his election either by himself or by a committee subsequently appointed. His acts before the appointment of a committee are thus voidable, not void.

'' The provisions of article 4 of the Insanity Law and those of article 81 of the Civil Practice Act have two distinct objects in view. Under the Insanity Law a person alleged to be insane may be committed to an institution for the custody and treatment of the insane upon an order made by a county judge or justice of the Supreme Court. \* \* \* The purpose of the Insanity Law is to look after the person of the incompetent and has nothing to do with his property except as it may be charged with the expense of his maintenance.

'' On the other hand the provisions of the Civil Practice Act (Sections 1356–1384) have relation to the property of the incompetent and the appointment of a committee to preserve it. Upon the presentation of a petition the court inquires by means of a jury or commission into the question of insanity and the property of the alleged incompetent. The finding of the jury or the

594

commissioners is termed 'an inquisition' (Section 1368), and upon it the court appoints a committee to take charge of the incompetent's property.

"Having in view the provisions as well as the purposes of the Insanity Law and the Civil Practice Act it is quite apparent that when this court said that the deed of a lunatic before office found is voidable only, and not void, it meant by office found the inquisition resulting in the appointment of a committee under the provisions of the Civil Practice Act, and did not refer to the commitment of the person under the Insanity Law."

Section 236 of the Civil Practice Act provides in part: "A party who is of full age may prosecute or defend a civil action in person or by attorney *unless he has been judicially declared to be incompetent to manage his affairs.*" (Emphasis supplied.) This section is to be applied according to its terms. It refers to a person judicially declared to be incompetent to manage himself or his property in a proceeding pursuant to the provisions of the Civil Practice Act, and, in conformity with the principles above summarized, it has been uniformly determined that a person of unsound mind but not judicially declared incompetent may sue and be sued in the same manner as any ordinary member of the community (see *Jacobs* v. *State of New York,* 175 Misc. 561; *Matter of Palestine,* 151 Misc. 100, *supra,* and cases therein cited).

This does not mean that a person of unsound mind will not receive the protection of the court (*Wurster* v. *Armfield,* 175 N. Y. 256, 262, *supra*), and specific provision is made for the appointment of a guardian ad litem or special guardian at any stage of any action or proceeding where it appears necessary for the protection of his rights and interest (Civ. Prac. Act, § 207). The appointment of such a guardian would of course in no way amount to an adjudication of incompetency but would merely be a determination of the fact that the state of the record indicates a necessity for the court to intervene for the party's protection. It may be that that is what should have been done in this case, and, on a retrial, the court may see fit so to exercise its discretion.

The judgment should be reversed, without costs, and a new trial should be granted.

WENZEL, Acting P. J., BELDOCK, MURPHY and KLEINFELD, JJ., concur.

Judgment reversed, without costs, and a new trial granted.