Alexander Del Giorno, J.
An ex parte application was made herein for an order appointing a guardian ad litem for Juana Lugo, for the purpose of filing a claim against the State of New York to recover damages for personal injury alleged to have been sustained by the said Juana Lugo as a result of an assault upon her by an attendant at Rockland State Hospital, where she was a patient, on July 24, 1955.
The supporting affidavit is made by Emilio Ciena, who alleges that he is the eldest son of Juana Lugo, and that the latter has no husband. It is alleged that she is of unsound mind, but that she has not been judicially declared to be incompetent to *577 manage her own affairs, and that no committee or general guardian has been appointed for her pursuant to law.
Although the court heretofore signed this order which was submitted, it has not been entered in the office of the clerk of the court upon the specific request of the court. The court, upon its own motion, now hereby vacates the said order, dated January 10, 1958, for the reasons hereinafter set forth.
Section 207 of the Civil Practice Act, which is of primary importance in the ensuing opinion, reads in part as follows: “ Guardian of infant or incompetent person without application. The supreme court may appoint a guardian ad litem or special guardian for an infant or an incompetent person, at any stage in any action or proceeding, when it appears to the court necessary for the proper protection of the rights and interests of such infant or incompetent person and fix the fees and compensation of such guardian, except when it is otherwise expressly provided by law.”
It is to be noted that this section refers to an incompetent person, as distinguished from an alleged incompetent person. Further, such an appointment is to be made by the court, however the action may have been instituted, only after it has been determined by the court that such appointment is for the proper protection of the rights and interests of the incompetent person.
Certain principles of law regarding this subject matter are everyday stock knowledge of lawyers and judges:
1. It is a basic legal principle that all persons are considered sane until proven to be otherwise. The word '‘ competent ’ ’ is a euphemism for “sane”, just as “incompetent” is for “insane”. The use of the word “incompetent” in place of ‘ ‘ insane ’ ’ is certainly preferable, because it describes a condition without attributing to it any suggestion of degradation.
2. The determination of incompetency may not be based upon any evidence given or a conclusion reached by a layman, but can be reached only after the presentment of evidence by qualified experts, namely, alienists, psychiatrists and any other doctor qualified to interpret the mental aberrations of the subject. (Matter of Frank, 283 N. Y. 106; Finch v. Goldstein, 245 N. Y. 300.)
3. It is well established that a person who has not been adjudged incompetent may sue or be sued, whether or not he is an inmate of a mental institution {Matter of Frank, supra). The deeds and contracts of a person of unsound mind, who has not been judicially declared incompetent are voidable, not absolutely void. (Smith v. Ryan, 191 N. Y. 452; Finch v. Goldstein, supra.)
*578 It may also be appropriate at this juncture to discuss what difference there may be in the commitment of an alleged incompetent and the appointment of a committee. Article 5 of the Mental Hygiene Law and article 81 of the Civil Practice Act are the two articles of statute law primarily concerned with the person, commitment of and the property of an alleged incompetent. They have two distinct objects in view.
Judge Cease, in the case of Finch v. Goldstein (supra) made it clear that former article 4 of the Insanity Law, now article 5 of the Mental Hygiene Law, provides the legal machinery whereby the court may declare the subject to be incompetent and provide for his possible commitment for care and treatment in a State institution or under the guidance of some relative. This can be done by the court only upon a certificate of lunacy made by two qualified medical examiners. Commitment under the Insanity Law does not change the status of the subject from competent to incompetent. He is known merely as an alleged incompetent.
On the other hand Judge Cease emphasizes in the Finch v. Goldstein case (supra) that article 81 of the Civil Practice Act provides the machinery for the appointment by the court of a committee for the incompetent who is charged with the preservation of his property. The appointment of a committee may come about only after a jury, upon a petition presented to the court, has determined on the testimony adduced before it, that the subject is incompetent and must be kept under treatment. Thus, the committee may be appointed by the court only on the basis of the jury’s findings. He, as such committee, takes charge of the incompetent’s property.
Rule 285 of the Rules of Civil Practice provides that in all proceedings for the appointment of a committee the alleged incompetent shall be designated “ an alleged incompetent person ”, and that after the appointment of the committee he shall be designated “an incompetent person ”. Section 236 of the Civil Practice Act provides: “A party who is of full age may prosecute or defend a civil action in person or by attorney unless he has been judicially declared to be incompetent to manage his affairs.”
In quoting these sections of the law, and if we refer to many of the decisions regarding alleged incompetents and their property rights, we see throughout the combination of communal solicitude for these unfortunate people as well as a strong protection for the integrity of the individual and his property. The solicitude which the conscience of man has imposed upon himself is not something new. It is ground in the *579 bitter experience of the ages and has come down to us through the common law. Today we accept the moral and social obligation to care for and protect these unfortunates among us who require our help and while we thus impose upon ourselves the duty and burden to help, we take none of their personal and property rights away; as a matter of fact, we set a powerful shield around those rights and they may be handled by others only in accordance with the stringent requirements of the law. The history of past misdeeds towards and mishandlings of person and property of alleged incompetents has too often been so offensive to the conscience of man that today we revolt against any thing or occasion that could even resemble the past. We readily suspect that were this not the case, many feeble- or weak-minded persons could be incarcerated in a mental institution and be prevented from the exercise of their own free will over their own possessions, upon the initiative of others whose sole purpose for so doing might be to gain control over the affairs or possessions of such persons. Thus the law, from vast experience, wary of the acts of the avaricious and the unscrupulous, oftentimes relatives or confidants, clothes the incompetent and the alleged incompetent alike with this mantle of solicitude, and furnishes to them the moral and legal defenses which are their birthright as human beings and as citizens.
Having satisfied itself from a philosophical standpoint as to the intent of the law, the court will not address itself to an analysis of the instant case. Admittedly, the said Juana Lugo, although alleged to be of unsound mind, has not been judicially declared to be an incompetent. While conceding that under such circumstances she may sue or be sued, the court feels, nevertheless, that if she is of unsound mind as alleged she may be unable properly and effectively to assert whatever rights she may have. Under those circumstances, the proper procedure to be followed would be an application for the appointment of a committee of the person and property of Juana Lugo, in accordance with the provisions of section 1356 et seq. of the Civil Practice Act specifying clearly the reason why such an application is made. (Finch v. Goldstein, supra.)
Assuming that the alleged incompetent has'no property or estate other than the alleged cause of action against the State of New York, and assuming further that this alleged cause of action is to be deemed a chose in action rather than a property right, the court still feels that a committee must be appointed. The prosecution of the claim of the alleged incompetent by the committee may result in the creation of an estate asset on behalf of the alleged incompetent, by way of a judgment of the *580 court in her favor, and in such case it will come into the hands of the alleged incompetent’s alter ego, her committee, where properly it belongs.
Furthermore, where an action is brought by a guardian ad litem, the alleged incompetent could at any time, before trial, during trial or even after judgment, repudiate such action, and could engage an attorney to bring an action de novo. The alleged incompetent is still competent in the eyes of the law, and is under no legal disability to sue between the time of the commission of the wrong and the time a committee of his person and property is appointed. (Civ. Prac. Act, § 236; Chilford v. Central City Cold Stor. Co., 166 Misc. 780.)
Another point to be considered is that if medical records of the institution are sought to be examined by the guardian ad litem, such examination may be refused by the hospital upon the ground that the matters contained therein are privileged communications between doctor and patient. The courts may well sustain such refusal. (Matter of Patarino, 208 Misc. 16.)
A guardian ad litem is in no position to say that he stands in the place of the alleged incompetent. Actually, he is merely one who serves on behalf of the alleged incompetent as the conductor of the case during the vicissitudes it may encounter in court. On the other hand, a committee is recognized by the courts as one who stands in the place of and acts in the stead of the alleged incompetent, and who is charged by the courts with full responsibility for his acts, from the time of his appointment through the time of his rendition of an account of proceedings. The committee actually is the alter ego of the incompetent, the one who stands in the place of the adjudged incompetent. He is in essence the incompetent’s normal ego.
An analogous situation to that involved in the instant application may be the average administration proceedings. A man dies intestate, leaving an estate and survived by a wife and children. It must be assumed that whatever he saved in his lifetime he intended to pass to his immediate family. It is, moreover, a legal fact that his goods and chattels become in fact theirs. Is the family, despite consanguinity, ability to administer and a natural right to the estate, empowered to touch one penny of the estate before the appointment of an administrator by the court? It is not. Bather, an administrator must be appointed by the court and it becomes his duty to manage the estate under the watchful eye of the court and to render a full and true accounting of his actions to the court. Only after the court approves such an accounting by the administrator does it release such administrator from the responsibility of *581 his fiduciary position. Even though such an estate may be comparatively small, the principle involved must be respected by the court, because the protection of the interests of those entitled to share in the estate is the paramount consideration. In such a situation, in a case where infants or incompetents are interested parties in the estate proceedings, the court will appoint a special guardian who will act on their behalf. The special guardian has no authority to administer the estate, but is charged solely with the duty of protecting the interests of his wards during the administration of the estate. His position necessarily is subordinate to that of the administrator of the estate. The standing of the special guardian in the estate is alike to that of a guardian ad litem, in that both, properly appointed, are charged with guiding the proceedings but bear no responsibility for the proper distribution of the assets thereof. The committee of an adjudged incompetent, on the other hand, duly constituted as such by the courts, has a responsibility which is the same as that of an administrator appointed by the court in an estate proceeding, to act on behalf of those who could not by law administer the estate for themselves.
In the case of Griffin v. New York Life Ins. Co. (272 App. Div. 939) the committee had been appointed properly by the court. This committee had instituted an action to recover certain disability benefits and to effect the return of certain premiums under a policy of insurance covering the incompetent. In the meantime, an order had been made declaring the insured to be competent and discharging the committee. Subsequently, the insured was recommitted to an institution for the treatment of the mentally ill without another adjudication of incompetency and without the appointment of a new committee. Special Term made an ex parte order substituting the son of the insured as guardian ad litem, as plaintiff in place of the committee. The defendant appealed from such order and from an order denying its application to vacate the order appointing the guardian ad litem. The defendant was sustained on appeal, the court holding that the jurisdiction of the Supreme Court may not be exercised until the fact of incompetency has been judicially determined, citing Matter of Blewitt (131 N. Y. 541) and Matter of Andrews (192 N. Y. 514).
In the case of Gasperini v. Manginelli (196 Misc. 547) which was an action for libel and slander, decided at Special Term, Queens County, September 20, 1949, the well-beloved Mr. Justice Hallinau, on a motion to dismiss the complaint on the ground that the plaintiff was insane and therefore required a guardian ad litem, denied the motion. He held that there had *582 been no proof of an appointment of a committee and stated (p. 551) that “ It is the inquisition resulting in the appointment of a committee which determines the question of, incompetency ”, (citing Finch v. Goldstein, supra), and that “In the absence of such a determination and appointment, the court has no authority either to appoint a guardian ad litem or to exercise any control over the property of the alleged incompetent.” (Citing Matter of Frank, 283 N. Y. 106, supra.)
In the instant application, the attorney for the petitioner leans heavily upon the case of Anonymous v. Anonymous (3 AD 2d 590). In that case, the plaintiff brought an action against his former wife to impress a trust on real property and for an accounting. In 1944, the plaintiff had been admitted to a State hospital where he remained for several days. In December, 1946, he was certified, pursuant to the provisions of the Mental Hygiene Law, to a State hospital and remained there until December, 1953. He was never adjudicated incompetent to manage himself or his affairs under the provisions of article 81 of the Civil Practice Act and no committee of his person or property was ever appointed. The trial court dismissed the complaint on the ground that plaintiff did not have capacity to sue but without prejudice to any action which a committee might take if appointed or to an action by plaintiff if declared competent in a proper proceeding. In reversing the judgment of the Supreme Court, the Appellate Division held that a person of unsound mind, but not judicially declared incompetent, may sue and be sued in the same manner as any ordinary member of the community. The court asserted that if the facts indicate to the court that such person is mentally ill or otherwise incapable of taking care of his own rights, the court has the right to' and may appoint a guardian ad litem pursuant to section 207 of the Civil Practice Act. The court stated (p. 594), however, that “ The appointment of such a guardian would of course in no way amount to an adjudication of incompetency but would merely be a determination of the fact that the state of the record indicates a necessity for the court to intervene for the party’s protection.”
It is the opinion of this court that the proposed guardian ad litem in the instant application is in error in construing this decision to sanction the appointment of a guardian ad litem upon an ordinary application. ' The Anonymous decision epitomizes the clear pattern of the law that such persons must come under the protection of the law according to the provisions thereof.
*583 The law provides the type of representatives such person shall have and the manner in which such representative shall protect the person and property of the alleged incompetent. The appointment of a guardian ad litem on an ex parte application certainly is not contemplated thereby. The court must hold that the rights of the alleged incompetent take precedence over every other consideration and the law as it stands must accordingly be strictly construed so as to protect the rights of such alleged incompetent with respect to his person and his property. It may be suggested by attorneys in interest that such construction of the law is unnecessarily strict and severe. The court is not unaware of the fact that its construction may result in what might seem to be hardship and harassment to the families of alleged incompetents who have not been adjudicated to be such, particularly where such families may be indigent. It is true that the course of action which will have to be pursued by petitioning representatives of such alleged incompetents will necessarily result in some expenditures. The harm that might otherwise ensue to the alleged incompetent, however, overcomes the question of any financial saving to the family. Furthermore, the court is confident that the Attorney-General will render to the families of such alleged incompetents all possible assistance to the end that committees may be appointed expeditiously in cases such as this and with a minimum of expense.
Enter order vacating the previous order appointing the guardian ad litem, dated January 10, 1958.