Desmond, J.
In this separation suit brought by wife against husband the wife moved for temporary alimony and counsel fees and the husband cross-moved to dismiss the complaint for lack of jurisdiction, lack of standing to bring the action and failure tp state a cause of action. Special Term made an order which denied defendant’s motion, awarded plaintiff temporary alimony of $300 a week, directed the payment of a counsel fee, and appointed a special guardian to conduct an investigation into the facts and to report to the court his recommendations as to the appropriate course of action to be taken for the care and protection of plaintiff’s rights and interests, in the light of her mental condition. Finally, Special Term ordered that the fees of the special guardian and his disbursements, including the expenses of a trip to Minnesota or Indiana or both, should be paid by defendant as necessary litigation expenses of plaintiff.
On appeal, Appellate Division, First Department, affirmed by a divided vote, two Justices dissenting and voting to dismiss the Complaint on the ground of plaintiff’s incapacity to sue because of her mental condition. The Appellate Division then granted defendant leave to appeal to this court, certifying five questions, which in effect ask us to decide whether defendant’s cross motion for dismissal should have been granted on the ground of lack of capacity to sue or on the ground of lack of authority in plaintiff’s attorneys to bring the action, and whether Special Term had power on this showing to appoint a special guardian fop plaintiff and to direct that his fees and expenses be paid by defendant.
The answers to these certified questions will be governed by the effect of the allegation in the complaint that “ At all times hereinafter mentioned, plaintiff was, and she still is, mentally ill and of unsound mind and psychotic and incompetent to manage her person or property or affairs ’ ’ and by other references in the complaint to her mental condition. Those statements, ordinarily surprising ones to be made by plaintiff about herself, were, however, an essential part of the cause of action she sought to plead for a separation on the ground of failure to support her (see Goodale v. Lawrence, 88 N. Y. 513, 520). Plaintiff alleged that in February, 1952, after the parties had been married for about 12 years and while they were residing together in this *507 State, she left the abode of defendant at a time when she was (and ever since has been) incapable of knowing the nature, quality and consequences of her acts in leaving defendant’s home and failing to return there and that, therefore, her act in so leaving did not constitute an abandonment. The further allegations of the complaint are that at the time plaintiff left defendant, and ever since, defendant well knew of plaintiff’s mental illness, that despite his large net income of about $100,000 a year he has neglected and refused to provide more than $200 per month for her support and maintenance which is far below, it is alleged, her needs for maintenance, support and medical treatment, and that since October, 1953 he has failed and refused to pay anything at all for her support, maintenance or treatment. It was found and undisputed below that plaintiff had been mentally ill for some time before she left her husband in February, 1952, and that in that month, accompanied by her son by a former marriage, she left New York and lived with other relatives until December, 1952 when she went to Minneapolis where she has since been living with her son. During 1951 and 1952 plaintiff had undergone treatments in two New York hospitals and had been examined by several physicians who had reported to defendant that his wife was paranoiac and that she had been mentally ill for several years. After she left defendant, plaintiff was a patient for some months in a hospital in St. Paul where she was treated by a psychiatrist who gave it as his opinion that, according to the history given to him, plaintiff’s life with her present husband is a principal cause of her mental illness. This physician’s affidavit states also without dispute that defendant has failed to pay the physician’s bill for services or the bills of the hospital in St. Paul.
In 1953 a probate court in Minnesota, on an application signed by plaintiff alleging her incompetency, had appointed her son general guardian of her person and estate but it appears and is not disputed by defendant that this Minnesota order was made without hearing or testimony, and that it contained no finding of incompetency. Defendant at various points in his argument relies on this Minnesota order as a binding adjudication of incompetency sufficient to deprive plaintiff of legal capacity to sue. However, as we have said, the order was made ex parte *508 without a hearing, contains no adjudication of mental incompetence and, more importantly, is not conclusive or binding on the New York courts since plaintiff was, as is in effect conceded here, a domiciliary of New York (see Matter of Curtiss, 134 App. Div. 547, 551, affd. 197 N. Y. 583). In February, 1956 plaintiff petitioned the same Hennepin County Probate Court of Minnesota for an order “ for Restoration to Capacity ” but after hearings and testimony by psychiatrists and a finding that she continued to be mentally ill and incapable of managing her person and estate the Minnesota court denied the petition to terminate the guardianship. There was another prior legal proceeding between the parties which should be mentioned. In November, 1953, on the application of plaintiff’s son, a guardian ad litem was appointed for her and that guardian ad litem brought for her an action in Supreme Court, New York County, against her husband for a separation and an accounting but later the appointment of the guardian ad litem was vacated and the suit dismissed on the apparent ground, among others, that since there had been no adjudication of incompetency the court had no power to appoint a guardian ad litem. Although that dismissal has no particular binding force here it is of some importance that defendant secured that dismissal on showing among other things that plaintiff was a New York resident and that, therefore, the Minnesota adjudication could not be recognized here. In other words, defendant in that earlier New York suit successfully urged that the suit could not be brought by plaintiff through a guardian ad litem because she had not been adjudged incompetent and so was not to be considered incompetent by the New York courts. In the present suit he is urging that she is in fact incompetent as she herself alleges and that, therefore, she cannot bring the suit.
It is not necessary to canvass all the facts as to treatment of plaintiff by numerous psychiatrists and in various hospitals or as to the professional opinions as to her mental capacity. It is undisputed that defendant refused to pay these various bills of doctors and hospitals but he gave as his reason for such refusal that he had not been consulted about such matters, that he could not be obligated by arrangements made by his stepson and that he was willing to provide appropriate care if his wife would return to this State. The Special Term opinion here con *509 tains what amounts to a finding that defendant inexcusably refused to pay for his wife’s needs and disregarded her welfare. We do not think that the Iona fides of the husband’s position in this respect has any direct bearing on the answering of the law questions proposed to us by the Appellate Division. However, as we shall show later, the husband’s attitude and the view that the Special Term and presumably the Appellate Division majority took of it may have some bearing on the correctness of the lower courts’ decision to permit this action to go forward with a special guardian protecting the plaintiff rather than to force proceedings to be taken here for the appointment of a committee for plaintiff.
The law question of general importance is this: May a court entertain an action brought by a plaintiff who declares herself to be mentally incompetent? Support for an affirmative answer is found in section 236 of the Civil Practice Act which says, in part, that: “ A party who is of full age may prosecute or defend a civil action in person or by attorney unless he has been judicially declared to be incompetent to manage his affairs ”. Both the First Department in the present case and the Second Department in Anonymous v. Anonymous (3 A D 2d 590) construed section 236 to mean what it says, that is, that “ a person of unsound mind but not judicially declared incompetent may sue or be sued in the same manner as any ordinary member of the community” (3 A D 2d 594). This rule is not to be changed because plaintiff’s incompetency is alleged by herself rather than being established otherwise. And it seems a reasonable rule. There is a method under article 81 of the Civil Practice Act for officially establishing incompetency and unless and until that is done the courts should not have to decide case by case whether a particular party is of sufficient mentality to be a suitor or defendant. This same position appears to be taken by the courts of other jurisdictions. It does not mean that the courts shut their eyes to the special need of protection of a litigant actually incompetent but not yet judicially declared such. There is a duty on the courts to protect such litigants (Wurster v. Armfield, 175 N. Y. 256, 262). We think that duty was performed by the court in this case when it appointed as plaintiff’s special guardian a learned and conscientious lawyer and directed him *510 to make an investigation and report to the court as to what steps should be taken to protect plaintiff’s interests,
It is easy to suggest that the court here should have insisted that a committee be appointed, However, since under section 207 of the Civil Practice Act there -is no absolute legal bar against the prosecution of such a suit by plaintiff herself as an unadjudged incompetent the question as to how best to protect her interests was one of discretion for the lower courts, Special Term, we hold, acted within its powers in appointing a special guardian. The argument against the existence of such power is a technical one. Defendant reads sections 207 and 208 of the Civil Practice Act as meaning that the Supreme Court may appoint a special guardian for an adjudged incompetent only, and he seeks confirmation of this in some language in Matter of Frank (283 N. Y. 106). We think the two sections reasonably read and in the light of common court experience mean that when a person appears to be incompetent or has been adjudged incompetent the court may appoint a special guardian even when there be a committee, providing that some special situation (such as conflict of interest between the party and the committee) seems to require it. As to Matter of Frank (supra), We Were discussing there the power of a court to pay a special guardian’s fee from the estate of a deceased alleged incompetent who had died while proceedings for the appointment of a committee were pending, Our actual holding in Frank was that the incompeteney proceeding necessarily abated when the alleged incompetent died so that the court conducting the abortive incompeteney proceeding never acquired jurisdiction of the property of the alleged incompetent (see 283 N. Y. 110) and had no power to dispose of any of that property even to the extent of paying a fee to the special guardian, The language of the Frank opinion should be read in the light of the precise question that was there being answered.
Another question certified to us by the Appellate Division asks us to say whether the attorneys appearing for plaintiff in this suit have authority to prosecute the action. From our holding that section 236 of the Civil Practice Act (supra) authorizes plaintiff as an unadjudged incompetent to sue, it necessarily follows that she is entitled to be represented by attorneys.
*511 It seems incongruous that a self-declared incompetent person may he a suitor in the courts but the courts in this case have not closed their eyes to the fact that plaintiff is of unsound mind. Obeying the instructions of the order below the special guardian will investigate and report to the pourt as to what the situation is and as to what should be done to protect plaintiff. We must assume that the Supreme Court pn receipt of that report will do what is necessary for her further protection.
The order appealed from should be affirmed, with costs, the first, second and fifth questions certified should be answered in the negative, and the third and fourth questions certified ip the affirmative.
Chief Judge Conway and Judges Dye., Fuld, Froessel and Burke concur with Judge Desmond ; Judge Van Yoorhis votes to reverse and to dismiss upon the dissenting opinion of Peck, P. J., and Bobbin, J., in the Appellate Division.
Order affirmed, etc.