OPINION OF THE COURT
Gerard M. Weisberg, J.
The questions presented are: (1) whether the guardian ad litem of a nonadjudicated incompetent has the power to settle a personal injury claim (CPLR 1207 et seq.); and (2) whether this court has jurisdiction to make a disposition of the award prior to a formal adjudication of incoinpetency or the appointment of a committee. (See Mental Hygiene Law, art 78.)
The claim of Angelina Húrgalo Fales, for personal injuries sustained while a patient at Kingsborough Psychiatric Center, was prosecuted by Celia Húrgalo as guardian ad litem, pursuant to an order of this court (Mangum, J.). A judgment was rendered after trial for the sum of $425,779.17 from which both the State and claimants appealed; thereafter, the parties entered into a stipulation compromising the judgment for the sum of $375,000. Claimants now move “for an order pursuant to CPLR 1207, settling this action on behalf of the incompetent” wherein it is prayed that the court award an attorney’s fee plus disbursements and remit the proceeds to the guardian ad litem.
*637 As originally enacted, CPLR 1201 permitted the appointment of a guardian ad litem for an “adult defendant incapable of adequately protecting his rights.” (L 1962, ch 308; emphasis added.) An action could not be prosecuted by the guardian ad litem of an “alleged incompetent”, because an adult was competent to do so until judicially declared otherwise. As Presiding Justice Me Lennan stated in Rankert v Rankert (105 App Div 37, 39): “if the property interests of [plaintiff] required that an action should be commenced, and she is incompetent to commence or prosecute such action, then clearly a committee of the property to be affected should be appointed and the necessary action commenced and prosecuted by such committee.” (See, also, Matter of Patarino, 208 Misc 16; Matter of Perez, 14 Misc 2d 497.)
The doctrine was qualified in Anonymous v Anonymous (3 AD2d 590, 594) wherein the court held that a nonadjudicated incompetent could maintain an action to impress a trust, stating: “This does not mean that a person of unsound mind will not receive the protection of the court (Wurster v. Armfield, 175 N. Y. 256, 262, supra), and specific provision is made for the appointment of a guardian ad litem or special guardian at any stage of any action or proceeding where it appears necessary for the protection of his rights and interest (Civ. Prac. Act, § 207).” Similarly in Sengstack v Sengstack (4 NY2d 502, 509-510) the court held that a self-proclaimed, nonadjudicated incompetent could maintain a separation action, though similarly alluding to the court’s duty to protect such litigants, saying: “[w]e think that duty was performed by the court in this case when it appointed as plaintiff’s special guardian a learned and conscientious lawyer and directed him to make an investigation and report to the court as to what steps should be taken to protect plaintiff’s interests.” The court in Sengstack did not, however, indicate that a guardian ad litem might actually maintain the action in a representative capacity.
In Leibowitz v Hunter (45 Misc 2d 580) the court, although noting that CPLR 1201 (as originally enacted), referred solely to defendants, nevertheless found in Sengstack (supra) the implicit power of the court to appoint a *638 guardian ad litem for the express purpose of maintaining an action. This result had been foreshadowed by Matter of Lugo (10 Misc 2d 576, 579-580, revd 8 AD2d 877, affd 7 NY2d 939) wherein the Court of Claims had denied a motion to appoint a guardian ad litem for an inmate of a mental hospital, stating:
“Assuming that the alleged incompetent has no property or estate other than the alleged cause of action against the State of New York, and assuming further that this alleged cause of action is to be deemed a chose in action rather than a property right, the court still feels that a committee must be appointed. The prosecution of the claim of the alleged incompetent by the committee may result in the creation of an estate asset on behalf of the alleged incompetent, by way of a judgment of the court in her favor, and in such case it will come into the hands of the alleged incompetent’s alter ego, her committee, where properly it belongs.
“Furthermore, where an action is brought by a guardian ad litem, the alleged incompetent could at any time, before trial, during trial or even after judgment, repudiate such action, and could engage an attorney to bring an action de novo. The alleged incompetent is still competent in the eyes of the law, and is under no legal disability to sue between the time of the commission of the wrong and the time a committee of his person and property is appointed. (Civ. Prac. Act, § 236; Chilford v. Central City Cold Stor. Co., 166 Misc. 780.)” (Emphasis added.)
The Appellate Division however found this to be a hyper-technical approach, indicating that it found no justification for distinguishing between an incompetent person and an alleged incompetent where it appeared that the party affected was a person of unsound mind and actually an inmate of an institution. (Followed in Hawley v State of New York, 28 Misc 2d 150; see, also, Matter of Weingarten v State of New York, 94 Misc 2d 788.)
The Legislature adopted this view by amending CPLR 1201 to provide that a guardian ad litem may be appointed for “an adult incapable of adequately prosecuting or defending his rights.” (L 1968, ch 844; emphasis added.)
The question now presented is whether a guardian ad litem who has successfully prosecuted an action for such an *639 adult may settle it and actually receive the proceeds. Significantly, the Civil Practice Law and Rules provides for the settlement of an action and the disposition of proceeds flowing from the claims only of an infant or judicially declared incompetent. With respect to an adjudicated incompetent, CPLR 1206 provides in relevant part: “any property to which *** a person judicially declared to be incompetent is entitled *** shall be distributed to the guardian of his property or the committee of his property”.
Thus, a guardian ad litem is not, at least explicitly, a person empowered to bring a settlement proceeding or to receive an award in a representative capacity. In fact, when the Legislature amended CPLR 1201 in 1968, it also amended, inter alia, CPLR 1208 (settlement procedure; papers; representation), but did not provide for the situation presently under discussion, notwithstanding it would be reasonable to anticipate that a guardian ad litem who had commenced an action, would someday find himself on the eve of settlement or judgment. (See, generally, McKinney’s Cons Laws of NY, Book 1, Statutes, § 74, to the effect that the normal implication from legislative silence concerning a matter within the purview of a statute is that the omission was intentional.)
While it might be argued that the power to prosecute an action necessarily entails the power to settle, it does not follow that one who prosecutes an action may also receive the proceeds of an award, especially where a continuing duty to manage and conserve the funds for an indefinite period would devolve upon such person. As Judge Crane stated in Finch v Goldstein (245 NY 300, 303): “[u]ntil the appointment of a committee neither the State nor any one else has any power or control over [a nonadjudicated incompetent’s] property or any authority to act in his behalf. He alone remains in possession of his property and can dispose of it.” (See, also, Matter of Frank, 283 NY 106; Smith v Ryan, 191 NY 452; Blinn v Schwarz, 177 NY 252; Hughes v Jones, 116 NY 67.)
It was similarly held in Ackerman v State of New York (199 Misc 76) that a committee should be appointed to receive the proceeds of an appropriation award on behalf of *640 the inmate of a State mental hospital. More recently, in Matter of Young (79 Misc 2d 208, 210) in which a guardian ad litem in a conservatorship proceeding moved to transfer the proposed conservatee’s property to himself pendente lite, the court denied the relief saying: “the court does not believe the guardian ad litem is entitled to the actual management of any property or assets”.
Thus, we hold that the proceeds of a personal injury claim or settlement may not be paid to a guardian ad litem. At this time the court has but one alternative, to direct that the proceeds be paid directly to Ms. Fales, the alleged incompetent. Such a disposition would, however, be extremely unwise in view of facts disclosed by the moving papers and previous orders and decisions of the court indicating, at least prima facie, that Ms. Fales’ mental and physical condition is such as to absolutely preclude the prudent management of so large an estate, either for her own benefit or that of her children. In particular, Judge Rossetti found in his decision on damages dated September 24, 1980 that Ms. Fales was diagnosed as paranoid-schizophrenic, that her mental condition had been aggravated by the severe physical injuries sustained, and that “she is not able to care for herself or tend to her everyday chores, and is therefore in need of placement in a health related facility for the remainder of her life”.
Under these circumstances, the appointment of a representative party having legal authority to administer and dispose of property may be the most prudent course to follow. While not wishing to prejudge the matter, nor to preclude contrary findings in a court of competent jurisdiction, we deem it advisable that application be made for the appointment of a committee. The Court of Claims does not possess jurisdiction to entertain such a proceeding. (Court of Claims Act, § 9.) Under article 78 of the Mental Hygiene Law, exclusive jurisdiction is conferred upon the Supreme and County Courts to adjudicate the question of incompetency and to appoint a committee.
Accordingly, the motion is denied without prejudice to renewal after application has been made to the Supreme Court for an adjudication of incompetency and the appointment of a committee.