CAROL WELDON, by Her Proposed Guardian ad Litem, JEROME LEITNER, et al., Plaintiffs, v LONG ISLAND COLLEGE HOSPITAL et al., Defendants.

MARY STEPHENS, an Infant by Her Father and Natural Guardian, ROBERT STEPHENS, Plaintiff, v VICTORY MEMORIAL HOSPITAL et al., Defendants.

Supreme Court, Kings County, December 19, 1988

**APPEARANCES OF COUNSEL**

*Morris J. Eisen, P. C. (Cheryl S. Bulbach* of counsel), for Carol Weldon, plaintiff. *Bonomo, Darwin, Geismar & Johnson (Delicia M. L. Johnson* of counsel), for Gokcobay and others, defendants. *Kramer, Dillof, Tessel, Duffy & Moore (Benedene C. Sonnenblick* of counsel), for Mary Stephens, plaintiff.

*Dwyer, Peltz & Walker (Paul E. Walker, Jaymie L. Einhorn and Kevin J. Brennan* of counsel), for Wausau Insurance Company, defendant.

## OPINION OF THE COURT

NICHOLAS A. CLEMENTE, J.

Two apparently disparate motions pertaining to separate cases pending in this IAS Part, *Weldon v Long Is. Coll. Hosp.* and *Stephens v Victory Mem. Hosp.,* relate to a recurrent question concerning proper parties to an action. The background of each case is briefly sketched below.

### *Weldon v Long Is. Coll. Hosp.*

In October 1985, Carol Weldon was injured in an automobile accident. After the accident she was admitted to Long Island College Hospital. Since her hospitalization she has been in a comatose state. As a result of the automobile accident an action was started against Golden Flow Dairy Co. and Josef Stanczykiewicz. For purposes of *that* action (which has been settled) Jerome A. Leitner was appointed a guardian ad litem.

Since it was the view of Carol Weldon's attorneys and husband, Gerard, that Carol received negligent care at Long Island College Hospital, this action was commenced by service of a summons and complaint upon a host of defendants. With time running short, the pleadings were filed with the County Clerk pursuant to CPLR 203 in order to extend the Statute of Limitations. Innovation being the mother of desperation, the pleadings name as plaintiffs "Carol Weldon, by her proposed Guardian Ad Litem, Jerome Leitner, and Gerard Weldon". Thus, as to Carol Weldon the action was commenced by a "proposed guardian".

A motion is now made on behalf of plaintiffs essentially to validate the attorney's choice of personal representative, nunc pro tunc. The motion also requests that provision be made for Jerome Leitner* to be paid and for the caption of the action to be amended.

Defendants Gokcobay, Mohaideen and Chaudary oppose the motion. They contend that a proposed guardian cannot commence an action; that there was really no plaintiff at the time

---

* Mr. Leitner is both an eminent attorney and a renowned professor of law. His personal qualifications to act as a guardian ad litem are not in dispute.

the action was brought and that the attempt to commence an action was a nullity.

Thus, the issue in *Weldon* is whether the failure to have a guardian ad litem appointed, where one is concededly needed, is a jurisdictional defect making unavailable judicial relief even when equitable.

The statutory backdrop for this issue is, of course, CPLR 1201 and Mental Hygiene Law § 77.09. The former provides that "A person shall appear by his guardian ad litem * * * if he is an adult incapable of adequately prosecuting or defending his rights".

Section 77.09 states, "A guardian ad litem may be appointed at any stage of the proceeding or during the conservatorship to represent the interest of the person whose property is sought or has been ordered by the court to be conserved." While these statutes grant the court broad latitude to appoint a guardian ad litem they do not indicate what remedy is appropriate where, as in the case at bar, circumstances call for a guardian but an action has been commenced by an unauthorized person.

### *Stephens v Victory Mem. Hosp.*

Beginning in 1969 and apparently ending in 1971, plaintiff Mary Stephens came under the care of Dr. Edward DiFronzo, among others. Dr. DiFronzo died in 1977 and his daughter Elizabeth Barone was appointed voluntary administratrix of his estate under SCPA article 13 in order to settle his estate.

Plaintiff has started an action seeking to recover damages for alleged medical malpractice against various defendants. One of these defendants is listed as "Elizabeth C. Barone as administratrix of the Estate of Dr. Edward DiFronzo". She has not been served, however, and the matter is now before the court on a motion made by plaintiff seeking an order pursuant to CPLR 308 (5) authorizing expedient service of the summons and complaint. Plaintiff asks that she be allowed to serve process by serving the Wausau Insurance Company, the insurance carrier of Dr. DiFronzo at the time of the alleged malpractice.

In support of the motion, plaintiff contends that she tried to serve Barone at the address set forth in the Surrogate's Court file of Dr. DiFronzo but found she no longer lived there. Attempts to find Barone were made by questioning neighbors and area shopkeepers, checking phone directories and the

United States Post Office. Notwithstanding these efforts to serve Barone, she could not be found. Plaintiff offers to limit her recovery to the amount of Dr. DiFronzo's insurance coverage and to waive an examination before trial of Barone. The further point is made that Wausau Insurance Company is the real party in interest and so plaintiff asks the court to permit service upon it under CPLR 308 (5). Such section provides that

"Personal service upon a natural person shall be made by any of the following methods: * * *

"5. in such manner as the court, upon motion without notice, directs, if service is impracticable under paragraphs one, two and four of this section."

The Wausau Insurance Company opposes the motion on the grounds that plaintiff has not shown that service on Elizabeth Barone is impracticable within the meaning of CPLR 308 (5) nor that service upon the insurance company is reasonably calculated to apprise Barone of the lawsuit.

The issue as framed by the parties is whether Barone may be served by serving Dr. DiFronzo's insurance carrier. In my view, both parties have misconstrued the point. Before service pursuant to CPLR 308 (5) may be considered the question whether Barone may be made a party defendant must be resolved.

### DISCUSSION

As indicated at the outset, in both of these actions, there has been an attempt to utilize, in one case as a plaintiff, in the other as a defendant, an individual whose representative capacity has not been judicially mandated.

In *Weldon,* plaintiff's attorney should have applied for the appointment of a guardian ad litem before commencing the action. Instead, he started the action in the name of a stranger. Generally, the question of a person's mental capabilities is a factual question *(McCarthy v Volkswagen,* 55 NY2d 543, 548). But no factual issue is presented here since plaintiff is concededly comatose. Interestingly, if the action had been commenced in the name of the injured plaintiff, there would be a strong basis to hold that such action should be considered to have been validly commenced. It has, after all, been held that a person of unsound mind who has not been declared judicially incompetent may sue or be sued in the same manner as an ordinary member of the community *(Sengstack v Sengstack,* 4 NY2d 502, 509; *Keown v Wright,* 89 AD2d 932;

*Rau v Tannenbaum,* 85 AD2d 522; *Matter of Lugo,* 8 AD2d 877; *Anonymous v Anonymous,* 3 AD2d 590). In *Sengstack v Sengstack (supra),* plaintiff declared herself to be incompetent. Prior judicial proceedings, while not adjudicating her an incompetent, gave credence to the view that she was, in fact, incompetent. Noting the incongruity of permitting a self-declared incompetent to be a suitor in the courts, plaintiff was nevertheless permitted to go on with the action. The court pointed out that there is a method for officially establishing incompetency and unless and until that is accomplished, the courts should not have to decide on a case-by-case basis whether a party is of sufficient mentality to be a suitor or defendant.

The *Sengstack* approach could only support the course adopted by the attorney for Carol Weldon, if I were to conclude that a concededly incompetent person could name her own guardian.

Rather Carol Weldon's comatose condition forces the conclusion that any action taken on her behalf must be deemed a nullity *(cf., Kushner v Mollin,* 144 AD2d 649 [2d Dept 1988]). Once found to be a nullity, the court cannot retroactively validate Jerome Leitner's status because when he served the summons and complaint he lacked the power to confer jurisdiction *(Stock v Mann,* 255 NY 100, 103).

Turning to the *Stephens* case *(supra),* similar jurisdictional difficulties arise. Plaintiff has unilaterally determined, by naming such person as a party defendant, an individual to be a personal representative of a decedent. Not only is the location of Elizabeth Barone unknown, but more significant Dr. DiFronzo's estate has been wound up and she has been discharged as administratrix. Thus, there is no continuing nexus between her and Dr. DiFronzo's estate.

Plaintiff in misperceiving his remedy relies on two Appellate Division cases. In *Saulo v Noumi* (119 AD2d 657), a medical malpractice action, the defendant doctor departed to the Middle East without leaving a forwarding address. After attempts to serve him proved unavailing, CPLR 308 (5) service was authorized. The court ordered that the missing doctor be served by serving a copy of the summons upon his malpractice carrier and his former medical associate in New York. Also, in the context of an action based upon a motor vehicle accident, service upon the defendant via the liability carrier was authorized in *Gibson v Salvatore* (102 AD2d 861, 862). There the

court stated, "Under the circumstances of this case, the method of service employed by Special Term—service upon the attorney retained to represent defendant by her insurance carrier—was reasonably calculated to give defendant notice of the proceeding, albeit neither the attorney nor the insurer had knowledge of defendant's whereabouts".

In my view, these cases are not determinative at bar. In these two cases, the court was faced with missing defendants, not a missing *potential* personal representative. In seeking to latch on to Barone, plaintiff seems to have disregarded the fact that in suing a deceased party, there is a need for substitution of a proper party and there are distinct statutory requirements as to how to proceed, i.e., CPLR 1015 and 1021. Plaintiff's course should be clear when the CPLR is read in conjunction with SCPA 1123 (2) (j) (i), which states:

"2. In addition to the foregoing grant of powers and without limitation thereon each public administrator is authorized to:
\* \* \*

"(j) Receive process or other notice as a necessary party in the following proceedings:

"(i) Any proceeding pending in the court where service of process or notice in behalf of any known or unknown person is directed by the court or where the court by order directs the public administrator to appear therein."

Thus, plaintiff's remedy should be to petition the Surrogate's Court to direct the Public Administrator to appear for Dr. DiFronzo in this action.

Accordingly, I conclude that plaintiffs in both these actions have proceeded incorrectly and that the defect is one of jurisdiction rather than form. What follows is that the motion in *Weldon* to have Jerome Leitner serve as guardian in the ongoing action must be denied. In *Stephens,* the motion for expedient service must be denied since Dr. DiFronzo's representative has not been determined and he is not yet a party to this action. At plaintiff's request, the other parties are directed to appear for further oral argument on pending motions relating to Stephen's certificate of merit, at a time to be fixed in the order.