*551 OPINION OF THE COURT
Renee R. Roth, S.
The issue before the court is whether a party to a probate proceeding, whose behavior required the appointment of a guardian ad litem (GAL) (SCPA 103 [40]; 402, 403), may be bound by such guardian’s consent to a settlement — over her own objection — even though she has not been adjudicated as “incapacitated” under article 81 of the Mental Hygiene Law.
By decision dated February 4, 1997, this court traced in detail the bizarre behavior of KB, one of the three children of decedent Bernice B., since the will was propounded on March 13, 1996. Under her will, which contains an in terrorem clause, decedent left her residuary estate as follows: 25% each outright to her daughters, Anne B. and Elinor B.; 14% in trust to her grandchildren; and 36% (about $1 million) in trust for the life benefit of KB, with remainder at KB’s death to decedent’s grandchildren. The will further provides that the net income of the trust for KB may be paid to her directly or indirectly, in such amounts and at such times as the trustee may in his discretion determine to be necessary and appropriate, and that up to 15% of the trust principal may be distributed by the trustee, in his discretion, for KB’s support and welfare. Testatrix named Anne and Elinor as executrices and named her financial advisor, Edward Halpert, as trustee of the trust for KB’s benefit.
By the time the court’s decision was rendered in February 1997, appointing a GAL for KB (who was appearing pro se), she had filed numerous papers claiming that the will was invalid, but had not filed formal objections to probate. The record by then was a textbook example of a serious problem which at some time or other confronts every court: the appearance of a party who seems to function on her own, but who is nonetheless as a practical matter so mentally or emotionally disabled as to be a hazard to her own interests in the litigation, and those of the other parties, as well as to the orderly administration of the court. Where such a party is involved in a proceeding, procedural requirements and even the merits may be held hostage until the problem is contained to the extent that statutory and constitutional mandates allow.
KB’s behavior, including her submissions in this court and others, demonstrated her lack of capacity to protect her interests. There were, for example, her persistent, unsupported charges that “Executioner” Anne had murdered their mother, *552 who had died in a nursing facility while in Seattle to be near Anne. Even after an autopsy by the Seattle Medical Examiner had resulted in a finding of death from natural causes, KB continued to report to this court that the death was the subject of an ongoing homicide investigation in Seattle. There were, as further example, the intemperate language of her document demands under SCPA 1404 and the haranguing and threatening nature of her examination of the witness at SCPA 1404 depositions despite the presence of a member of the Law Department. There was the barrage of motions in which KB sought referrals by this court to Federal, State and local authorities concerning the collection of charges that she leveled at others who were involved in this proceeding. Indeed, to the list of persons whom KB accused of crimes ranging from kidnapping, perjury, and larceny to “criminal indifference to civil obligations”, KB eventually added (as a “coconspirator”) the name of May Glazer, the attorney this court had appointed court evaluator in the proceeding brought by KB’s sister Elinor in July 1996 under article 81 of the Mental Hygiene Law to determine whether KB required the appointment of a guardian of her person or property.
Elinor’s petition had been prompted by several concerns. For example, she noted that KB’s rent had always been paid by her parents and, with their death, the rent apparently had gone unpaid and KB’s landlord had begun an eviction process. Although Elinor had thereupon arranged to pay the rent from estate assets, KB had failed to take the steps necessary to renew her lease. The overriding concern expressed in Elinor’s petition, however, was that, if left to her own devices in the probate proceeding, KB might overstep the line drawn by the in terrorem clause in their mother’s will and thereby lose her only source of financial support.
That KB has a history of menacing and a potential for harm to herself and others was established by court records uncovered by the court evaluator. These included, among other things, temporary and permanent orders of protection that had been secured in 1986 from Family Court by KB’s parents, who were supporting her.
In a preliminary report to the court in August 1996, the court evaluator recommended that a guardian ad litem be appointed in the probate proceeding to minimize KB’s disruptions to the proceeding and to help restrain KB from triggering the in terrorem clause. Shortly thereafter, the proponents of the will formally moved for the appointment of a guardian ad litem. *553 On the basis of the record, this court found that KB was an “incapacitated person” as defined in SCPA 103 (25) (“[a][] person who for any cause is incapable adequately to protect his or her rights”) and that she was thus a “person under disability” as defined in SCPA 103 (40). Accordingly, Ms. Glazer was appointed as GAL to appear on KB’s behalf (SCPA 402, 403).
After conclusion of the depositions under SCPA 1404, the GAL negotiated a settlement, under which the propounded will would be modified to give KB all trust income, rather than some part of it. KB has protested the GAL’s proposed settlement and, moreover, has tried to file objections to probate. Her failure to do so is the result of this court’s order dated June 17, 1997, designed to control the flood of frivolous, threatening submissions by KB, which directs court personnel to refuse to accept any filing from KB unless joined in by her GAL. If KB files objections to probate and loses the will contest (which is likely), the in terrorem clause would be triggered, resulting in her disinheritance.
As noted above, KB has been found to be “an incapacitated person” for purposes of appointment of a GAL in the probate proceeding. She has not, however, been found to be “incapacitated” within the context of Mental Hygiene Law article 81. Thus the question is whether the court may authorize a GAL to enter into a proposed settlement on her ward’s behalf (despite the ward’s objection) without an adjudication of the ward’s “incapacity” under the Mental Hygiene Law. There appears to be no judicial comment on such issue. But certain provisions of the Surrogate’s Court Procedure Act, read in the light of case law, point toward one conclusion, i.e., that a GAL cannot bind her adult ward to a settlement of which the ward disapproves unless the ward’s incapacity to participate in the litigation (or in its settlement) has been established under the special procedural safeguards afforded by the Mental Hygiene Law.
The relevant statutes are SCPA 401 and 402, concerning the “appearance” of parties. “Appearance” is a pivotal concept here, since (among other things) it includes a party’s rights to determine her course in a litigation, whether to judgment or to settlement. SCPA 401 expresses a general rule for the appearance of parties which clearly provides that any adult may appear, pro se or by an attorney of his choosing, other than an “incompetent or conservatee”.
It is noted that SCPA 401 — with its references to “incompetents” and “conservatees” — can no longer be applied as written *554 because in 1993, amendments to the Mental Hygiene Law eliminated “incompetents” and “conservatees” as legal categories (except for the class of persons who were previously adjudicated as such). In the place of declared “incompetency”, there is now the more flexible and less broadly stigmatizing adjudication of “incapacity” (Mental Hygiene Law § 81.01) — a term to which SCPA 401 makes no specific reference. Nevertheless, although SCPA 401 thus cannot now be read with strict literality, the sense of the statute would seem to remain clear: any adult party has the right to participate in a court proceeding unless and until she has been adjudicated to be mentally unfit to do so under procedures specially designed to determine the issue of such fitness.
Such a reading of SCPA 401 is not contradicted by SCPA 402, under which a person who is de facto incapacitated (although not formally adjudicated as such) “shall appear by a guardian ad litem”. (SCPA 402 [2]; see, Tur ano, Practice Commentaries, McKinney’s Cons Laws of NY, Book 58A, SCPA 401, at 367; SCPA 402, at 375.) Our courts have recognized that concurrent appearances by a GAL and by the ward are not necessarily redundant and are surely not mutually exclusive (see, Matter of Aho, 39 NY2d 241; Matter of Carvel, NYLJ, Apr. 24, 1995, at 32, col 5; Matter of Haynes, 82 Misc 228, 230). On the one hand, the GAL’s appearance is designed to serve as a safety net for such a ward in the proceedings (Matter of Palestine, 151 Misc 100, 104; Wurster v Armfield, 175 NY 256, 261). On the other hand, the GAL’s role — to identify and promote her ward’s “best interests” — may fall short of advancing the ward’s personal views in the litigation (Matter of Aho, supra).
The right of such a party to commence a suit had already been established by the Court of Appeals, in Sengstack v Sengstack (4 NY2d 502), by the time SCPA 401 and 402 were enacted. Sengstack was a matrimonial action brought by a wife who, to support certain claims against her husband, averred that she was mentally incompetent. The husband had earlier obtained dismissal of a suit that had been brought on the wife’s behalf by a guardian ad litem, on the ground that the wife was unable to sue through a personal representative since she had not been adjudged an incompetent. Nevertheless, when the wife thereupon personally sued, the husband moved to dismiss the action, arguing that she was in fact incompetent and was therefore precluded from being a plaintiff. The trial court denied the motion. In affirming, the Court of Appeals observed *555 that, “ ‘a person of unsound mind but not judicially declared incompetent may sue * * * in the same manner as any ordinary member of the community’ ” (supra, at 509, quoting Anonymous v Anonymous, 3 AD2d 590, 594). Surely, if such a person is entitled to bring an action or proceeding, she is clearly entitled to defend against one, either by an attorney or pro se.
Nothing in the legislative history of SCPA 401 and 402 suggests that they were intended to depart from such principles. Indeed, to the extent presently relevant, both appear to be derived, without material alteration, from sections 63 and 64 of the former Surrogate’s Court Act (see, 4th Report of Temp St Commn on Estates, 1965 NY Legis Doc No. 19, at 609), which had reflected the principles expressed in decisions such as Sengstack (4 NY2d, supra, at 507-509).
It is thus concluded that despite this court’s appointment of a GAL for KB she retains the right to be heard in person as a party in this proceeding, including the right to veto a settlement, unless and until she has been adjudicated an “incapacitated person”. In other words, the finding of incapacity that has already been made in this case (as the predicate for appointment of the GAL) is not the equivalent of the adjudicative process that the law requires in order to deny a party such as KB an element of her constitutional right to appear, namely, her right to exercise a veto over a settlement that would be binding on her. An adjudication having such a consequence must arise from a process having the safeguards afforded under the Mental Hygiene Law (see, Anonymous v Anonymous, 3 AD2d, supra, at 594). Where the fact of incapacity is disputed, those safeguards include the right to a hearing (Mental Hygiene Law § 81.11).
Based upon the foregoing, the parties are directed to appear on Monday, June 1, 1998, at 9:30 a.m., in room 509 of the courthouse, for trial on the issue of KB’s need for a guardian under Mental Hygiene Law article 81.