*477 OPINION OF THE COURT
Geoffrey J. O’Connell, J.
Frances Feminella makes this ex parte application to the court to be appointed guardian ad litem for Katherine Latanza,' her mother, pursuant to CPLR 1202. A recent decision (Matter of Lainez, 11 Misc 3d 1092[A], 2006 NY Slip Op 50822[U] [Sup Ct, Kings County 2006]) compels this court to consider whether the appointment of a guardian ad litem is appropriate notwithstanding that such guardian lacks the power to settle the pending tort action instituted on her mother’s behalf or to receive any settlement proceeds.
Petitioner’s two siblings, Theresa Graci and Carmine Latanza, consent to the application and waive service. Petitioner herself consents to her appointment (see, CPLR 1202 [c]) and avers that she owns her own home and a business and is capable of answering in damages for any negligence or misconduct. There is no indication that Katherine Latanza was given notice of this application.
Background Facts
Petitioner avers that Katherine Latanza “was injured while a customer of the Plainview Diner.” An unsworn letter from a physician states that “Katherine Latanza has many medical problems . . . [and] suffers from COPD, ASHD, PVD, Hypertension, Stroke, Senile Dementia among others.” According to petitioner’s supporting affidavit, her mother has no “individually owned” assets other than the tort claim and lives in a rented apartment with a full time aide. Katherine Latanza has executed a durable power of attorney appointing petitioner with full powers and has also executed a health care proxy and living will appointing petitioner.
Discussion
The facts confronting Justice Diana Johnson in Matter of Lainez (supra) differed from the present case in that the plaintiff was in a nonresponsive vegetative state and no advance directives appear to have been in place. The court noted that a guardian ad litem would not be empowered to settle the pending tort matter. It held that despite the fact that a Mental Hygiene Law article 81 proceeding would be “longer-winded” and expensive, “[t]he simpler procedure for obtaining a guardian ad litem was not created for the purpose of testing the waters first, to determine the feasibility of a monetary recovery” (2006 NY Slip Op 50822[U], *3-4).
*478 The court’s duty to protect an incompetent litigant has long been recognized (Sengstack v Sengstack, 4 NY2d 502, 509 [1958]) and the duty is not limited to cases in which there has been judicial determination of lack of capacity (Wurster v Armfield, 175 NY 256, 262 [1903]; Barone v Cox, 51 AD2d 115, 118 [4th Dept 1976]). In the discharge of its duty a court may appoint a guardian ad litem to prosecute a lawsuit on behalf of a person who lacks capacity notwithstanding that there has been no formal adjudication of incompetence. (Tudorov v Collazo, 215 AD2d 750 [2d Dept 1995]; Hawley v State of New York, 28 Misc 2d 150 [Ct Cl 1961].) Where, as here alleged, the alleged incompetent has no property other than the subject matter of the lawsuit, it has been held proper to appoint a guardian ad litem since there “will be time enough ... to determine whether a conservator [under the former statute] is to be appointed to receive, manage and conserve the proceeds” (Matter of Dery, 86 Misc 2d 416, 417 [Sup Ct, NY County 1976]).
Certainly, a guardian ad litem lacks authority to apply for court approval of a settlement nor may he or she receive and disperse the settlement proceeds. (Matter of Sills v Fleet Natl. Bank, 32 AD3d 1157 [4th Dept 2006].) In Matter of Lugo (8 AD2d 877, 877 [1959]), the Appellate Division rejected these “technical considerations” as a sufficient justification for requiring the appointment of what was then a committee under the Mental Hygiene Law rather than a guardian ad litem. In Fales v State of New York (108 Misc 2d 636, 638 [Ct Cl 1981]), Judge Weisberg asserted that the Legislature had adopted the Matter of Lugo view “by amending CPLR 1201 to provide that a guardian ad litem may be appointed for ‘an adult incapable of adequately prosecuting or defending his rights.’ (L 1968, ch 844; emphasis added.)”
The appointment of a guardian ad litem, at least where the plaintiff alleged to be incapacitated has no appreciable assets other than the pending or potential lawsuit, has been found appropriate. (See, Matter of Dery, supra.) A proceeding under article 81 of the Mental Hygiene Law involves expenses that may not be recouped from an alleged incapacitated person who has no assets and these expenses may be imposed upon a petitioner (Mental Hygiene Law § 81.09 [f]; § 81.10 [f]). Thus, requiring a proceeding under Mental Hygiene Law article 81 has the potential to act as a disincentive and thus deny an incapacitated person the protection the court is obligated to provide.
Nevertheless, the petition fails to comply with all of the procedural safeguards specified in CPLR 1202. While the ap *479 plication contains the proposed guardian ad litem’s consent and shows that she is able to answer in damages for any neglect or malfeasance in the discharge of her responsibilities (CPLR 1202 [c]), no notice of this application has been served upon the person with whom Katherine Latanza resides or upon Katherine Latanza herself (CPLR 1202 [b]; Matter of Weingarten v State of New York, 94 Misc 2d 788 [Ct Cl 1978]). Moreover, the evidence of Katherine Latanza’s medical condition is not in a legally admissible form. Finally, the court will require Katherine Latanza’s presence at a hearing at which testimony will be taken from at least the petitioner so that the court may make inquiry of Katherine Latanza herself.
The application is denied without prejudice to renewal upon compliance with this order.