■ In the Matter of ROSE STEINBERG. MARION ULBERG, Appellant; STELLA STERNBERG, as Guardian ad Litem, Respondent.—Judgment of the Supreme Court, Bronx County (Irma Vidal Santaella, J.), entered November 15, 1985, which, *inter alia,* adjudged the appointment of a conservator necessary and appointed Joel Mayer, Esq. as such conservator for Rose Steinberg, is unanimously modified, on the law and facts and in the exercise of discretion, to delete the name of Joel Mayer, Esq. as conservator and insert the name of Marion Ulberg, in his stead, and otherwise affirmed, without costs.

Petitioner-appellant Ulberg, aged 70, is a niece of Steinberg, an 89-year-old resident of the Bronxwood Home for the Aged in The Bronx. Ulberg had been looking after and visiting Rose Steinberg for some time and also managing the finances of Steinberg for seven years since the death of Steinberg's brother.

After hearing, Special Term found that Steinberg was in need of a conservator. However, she ruled that a conflict of interest existed between Steinberg and Ulberg with respect to the bank assets and that, accordingly, the best interests of the conservatee would be served by the appointment of a stranger as conservator.

The court's requirement that Steinberg, aged 89, attend the hearing, even though her doctor had reported that she was capable of walking only from her room in Bronxwood Home to his office in the Home's lobby, showed a lack of discretion and compassion, as did its refusal to hear any further testimony on the subject. The court went out of its way to deny the doctor an opportunity to explain Steinberg's inability to attend a hearing. Mental Hygiene Law § 77.07 (b) requires that

a proposed conservatee be present unless "unable to attend by reason of physical or other inability and such inability is established to the satisfaction of the court". It was manifest that Steinberg was physically and mentally unable to attend the court sessions. Ulberg's description of her aunt as restive, crying loudly and visibly distraught throughout the day reveals the inappropriateness of the court's requirement that she attend. This was compounded by the court's direction that she return for a further hearing.

Special Term refused to entertain the opinion of Dr. Grajower as to Steinberg's mental condition. The doctor stated that Steinberg could not be trusted to take her own medication, did not recognize him, did not often know where she was and wore clothing inappropriate to the seasons. He sought to testify that she was oriented only to her own name but the court disallowed such testimony because the doctor was not a psychiatrist or psychologist. However, determination of incompetency can be made after presentation of evidence by qualified experts, including a doctor qualified to interpret mental aberrations of the subject patient. (Matter of Lugo, 10 Misc 2d 576, revd on other grounds 8 AD2d 877, affd 7 NY2d 939.) Dr. Grajower, as Steinberg's treating physician for seven years and an expert in geriatric medicine, certainly was qualified to evaluate Steinberg's mental aberrations.

A review of the record also shows that the court challenged Ulberg throughout her testimony and was often sarcastic and argumentative, even though this was supposed to be a nonadversarial proceeding. The court also indicated at one point during the hearing that a conservator must be a resident of New York State and that Ulberg lived in New Jersey. However, there is no such statutory requirement. (See, Matter of Weisman, 112 AD2d 871.) In total, the conduct of the court herein was inappropriate and prejudicial.

In addition, there was no showing of a conflict of interest. All assets belonging to Steinberg were reported to the court. Petitioner testified that certificates of deposit (C.D.) were in her name in trust for Steinberg, pursuant to an earlier understanding between the parties that Steinberg would give Ulberg her C.D.'s, which would eventually go to her and her sister as heirs, and the interest on the accounts would be used for Steinberg's benefit during her life. The record shows that even though the accounts are in Ulberg's name, the money was not used by Ulberg for her own benefit. Further, although the court, in its decision, stated that Ulberg testified that the principal could not be used, actually, Ulberg testified that she

did cash one of the certificates when the interest on the accounts was insufficient to cover Steinberg's needs.

In support of its finding of conflict of interest, the court also mentioned that Ulberg hires a limousine to visit her aunt once a month. However, as petitioner explained she is 70 years old, does not drive, and cannot take a taxi from her place of residence in New Jersey to The Bronx. Therefore, the only way that she can visit her aunt is to hire a limousine. It should be noted that she is the only person who ever does visit Steinberg.

The court also referred to a desire on the part of Ulberg to move Steinberg from Bronxwood as an indication of self-interest. However the record indicates that although Ulberg inquired into the possibility of moving Steinberg closer to her so that she might visit her more often, she rejected the idea after discussion with the staff at Bronxwood, which stated that it would be harmful to remove Steinberg from her familiar surroundings.

It was, therefore, an abuse of discretion for the court to appoint a "stranger" as conservator in the absence of any conflict of interest. "[S]trangers will not be appointed as committee of the person or property of the incompetent, unless it is impossible to find within the family circle * * * one who is qualified to serve." *(Matter of Dietz,* 247 App Div 366, 367.) Here, Ulberg is one of Steinberg's only two surviving relatives and her appointment was agreed to by her sister, the only other surviving relative. Further, the guardian ad litem also approved of her appointment. As noted, *supra,* there was no demonstrable conflict of interest. Thus, it was an improvident exercise of discretion on the part of the court not to accede to the wishes and concerns of those most closely affiliated with the incompetent. *(Matter of Younker,* 42 AD2d 534.)￼ Concur—Sandler, J. P., Asch, Kassal, Rosenberger and Wallach, JJ.